1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Supervising Deputy Attorney General
ANDREW Z. EDELSTEIN (SBN: 218023)
KATHERINE BRUCK (SBN: 342536)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6307
  Fax: (916) 731-2125
  E-mail: Andrew.Edelstein@doj.ca.gov
         Katherine.Bruck@doj.ca.gov
*Attorneys for Governor Gavin Newsom, Attorney
General Rob Bonta, and Superintendent of Public
Instruction Tony Thurmond, in their official
capacities*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREA PRICHETT; JONAH OLSON; DUNIA HASSAN; KAUSER ADENWALA; LA EDUCATORS FOR JUSTICE IN PALESTINE; ABDULRAHMAN JARRAR, on behalf of his minor child, J.J.; LINDA KHOURY-UMILI, on behalf of her minor children, Y.U. and L.U.; ALICE FINEN, on behalf of her minor child, G.F.,** | No. 5:25-cv-09443-NW  **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**  [Declaration of Undersecretary Christine Hironaka filed concurrently] |
| Plaintiffs, | Date:       December 17, 2025 |
| | Time:       9:00 a.m. |
| **v.** | Courtroom:  3 |
| | Judge:      The Honorable Nöel Wise |
| **GAVIN NEWSOM, Governor of the State of California, in his official capacity; ROB BONTA, Attorney General of California, in his official capacity; and TONY THURMOND, California Superintendent of Public Education,  in his official capacity,** | Trial Date: Not Set  Action Filed: November 2, 2025 |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

OVERVIEW OF AB 715 ...................................................................................... 2

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ........................................................................................................ 4

    I.     PLAINTIFFS LACK STANDING ............................................................... 4

          A.    Plaintiffs Have Not Established Injury......................................... 4

                1.    Plaintiffs Do Not Intend to Engage in Proscribed Conduct ........... 5

                2.    Plaintiffs Are Not Subject to a Threat of Enforcement ................. 7

          B.    Plaintiffs Have Not Alleged a Harm Traceable to AB 715 ...................... 7

          C.    Plaintiffs' Alleged Harm Is Not Redressable by the Injunction Sought........................................................................................... 9

    II.    PLAINTIFFS' CLAIMS ARE NOT RIPE........................................................ 10

    III.   THE COURT LACKS JURISDICTION TO ENJOIN THE GOVERNOR AND ATTORNEY GENERAL DUE TO SOVEREIGN IMMUNITY ........................................... 11

    IV.   PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS........ 12

          A.    AB 715 Is Not Unconstitutionally Vague ................................................ 12

                1.    AB 715's Use of the Term "Antisemitism" Does Not Apply to Teachers' Conduct ................................................................. 13

                2.    "Antisemitism" is Adequately Defined ....................................... 13

                3.    Instructional Materials Constituting "Unlawful Discrimination" Are Easily Understood..................................... 17

                4.    "Factually Accurate" Instruction is Not a Vague Term............... 18

          B.    AB 715 Does Not Violate First Amendment Free Speech Rights............ 19

                1.    Teachers Do Not Have a First Amendment Right to Dictate Curriculum ............................................................................... 19

                2.    AB 715 Serves a Legitimate Pedagogical Interest ...................... 21

CONCLUSION .................................................................................................... 25

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*A Woman's Friend Pregnancy Res. Clinic v. Becerra*
  901 F.3d 1166 (9th Cir. 2018) .................................................................. 4

5

*Alaska Right to Life Pol. Action Comm. v. Feldman*
  504 F.3d 840 (9th Cir. 2007) .................................................................. 10

6

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd*
  557 F.3d 1177 (11th Cir. 2009) .............................................................. 22

7

8

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*
  418 F.3d 600 (6th Cir. 2005) .................................................................. 16

9

*Arce v. Douglas*
  793 F.3d 968 (9th Cir. 2015) ........................................ 16, 17, 21, 22, 23, 24

10

11

*Ark. Educ. Television Comm'n v. Forbes*
  523 U.S. 666 (1998) ................................................................................ 20

12

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) .................................................................. 12

13

14

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*
  457 U.S. 853 (1982) ................................................................................ 22

15

*Butcher v. Knudsen*
  38 F.4th 1163 (9th Cir. 2022) .......................................................... 14, 15

16

17

*C.F. v. Capistrano Unified Sch. Dist.*
  654 F.3d 975 (9th Cir. 2011) .................................................................. 20

18

*C.T. v. Vacaville Unified Sch. Dist.*
  No. 06-cv-197, 2006 WL 2092613 (E.D. Cal. July 27, 2006) .................. 9

19

20

*Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*
  885 F.3d 560 (9th Cir. 2018) .................................................................. 16

21

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*
  271 F.3d 1141 (9th Cir. 2001) ...................................................... 12, 20, 23

22

23

*California v. Texas*
  593 U.S. 659 (2021) .................................................................................. 9

24

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) .............................................................................. 6, 8

25

26

*Collins v. Thurmond*
  41 Cal. App. 5th 879 (2019) .................................................................... 8

27

28

1

### TABLE OF AUTHORITIES
#### (continued)

2

**Page**

3

*Confederated Tribes & Bands of Yakama Indian Nation v. Locke*
    176 F.3d 467 (9th Cir. 1999) ................................................................. 11

4

*CPR for Skid Row v. City of Los Angeles*
    779 F.3d 1098 (9th Cir. 2015) ............................................................... 14

5

6

*Dep't of Com. v. New York*
    588 U.S. 752 (2019) .............................................................................. 8

7

*Downs v. L.A. Unified Sch. Dist.*
    228 F.3d 1003 (9th Cir. 2000) ....................................................19, 20, 21

8

9

*E. Bay Sanctuary Covenant v. Biden*
    993 F.3d 640 (9th Cir. 2021) ................................................................. 3

10

*Epperson v. Arkansas*
    393 U.S. 97 (1968) .............................................................................. 21

11

12

*Ex parte Young*
    209 U.S. 123 (1908) ............................................................................ 11

13

*Flaxman v. Ferguson*
    151 F.4th 1178 (9th Cir. 2025) ............................................................ 10

14

15

*Frederickson v. San Diego Cnty. Bd. of Supervisors*
    No. 21-cv-1958, 2022 WL 485003 (S.D. Cal. Feb. 16, 2022) ............ 12, 20

16

*Gammoh v. City of La Habra*
    395 F.3d 1114 (9th Cir. 2005) ............................................................. 13

17

18

*Garcetti v. Ceballos*
    547 U.S. 410 (2006) ............................................................................ 19

19

*Gender & Sexuality All. v. Spearman*
    No. 2:20-cv-00847, 2020 WL 1227345 (D.S.C. Mar. 11, 2020) ............ 18

20

21

*Good News Emp. Ass'n v. Hicks*
    223 F. App'x 734 (9th Cir. 2007) ..................................................... 16, 24

22

*Grayned v. City of Rockford*
    408 U.S. 104 (1972) ...................................................................12, 13, 19

23

24

*Haaland v. Bracken*
    599 U.S. 255 (2014) .............................................................................. 9

25

*Hazelwood Sch. Dist v. Kuhlmeier*
    484 U.S. 260 (1988) ........................................................................ 21, 22

26

27

*Høeg v. Newsom*
    652 F. Supp. 3d 1172 (E.D. Cal. 2023) ............................................. 13, 18

28

iii

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3   *Holder v. Humanitarian L. Project*
        561 U.S. 1 (2010)............................................................................ 16, 18
4
    *Hotel & Motel Ass'n of Oakland v. City of Oakland*
5       344 F.3d 959 (9th Cir. 2003) ........................................................ 16

6   *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*
        515 U.S. 557 (1995)........................................................................ 15
7
    *I.N.S. v. Cardoza-Fonseca*
8       480 U.S. 421 (1987)........................................................................ 13

9   *Isaacson v. Mayes*
        84 F.4th 1089 (9th Cir. 2023)......................................................... 7
10
    *Italian Colors Rest. v. Becerra*
11      878 F.3d 1165 (9th Cir. 2018) ....................................................... 4

12  *Johnson v. Poway Unified Sch. Dist.*
        658 F.3d 954 (9th Cir. 2011) ................................................... 19, 20
13
    *Kennedy v. Bremerton Sch. Dist.*
14      597 U.S. 507 (2022)........................................................................ 19

15  *L.A. Cnty. Bar Ass'n v. Eu*
        979 F.2d 697 (9th Cir. 1992)......................................................... 11
16
    *Laird v. Tatum*
17      408 U.S. 1 (1972)............................................................................ 4

18  *Lujan v. Defs. of Wildlife*
        504 U.S. 555 (1992)..................................................................... 4, 9
19
    *McCarthy v. Fletcher*
20      207 Cal. App. 3d 130 (1989) ........................................................ 24

21  *Murthy v. Missouri*
        603 U.S. 43 (2024).......................................................................... 8, 9
22
    *Nat'l Endowment for the Arts v. Finley*
23      524 U.S. 569 (1998)........................................................................ 23

24  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*
        676 F.3d 829 (9th Cir. 2012) ........................................................ 10
25
    *Orkin v. Taylor*
26      487 F.3d 734 (9th Cir. 2007)......................................................... 13

27  *Pickering v. Bd. of Educ.*
        391 U.S. 563 (1968)........................................................................ 19
28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3    *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*
      122 F.4th 825 (9th Cir. 2024) .................................................................. 4, 7, 11

4

*Pleasant Grove City v. Summum*
5      555 U.S. 460 (2009) ........................................................................................ 20

6    *Project Veritas v. Schmidt*
      125 F.4th 929 (9th Cir. 2025) ......................................................................... 10

7

*Reges v. Cauce*
8      733 F. Supp. 3d 1025 (W.D. Wash. 2024) ...................................................... 24

9    *Rose v. Locke*
      423 U.S. 48 (1975) .......................................................................................... 16

10

*Rosenberger v. Univ. of Va.*
11      515 U.S. 819 (1995) ........................................................................................ 20

12    *Seattle Pac. Univ. v. Ferguson*
      104 F.4th 50 (9th Cir. 2024) ............................................................................. 4

13

*Sessions v. Dimaya*
14      584 U.S. 148 (2018) ........................................................................................ 16

15    *Sheldon v. Dhillon*
      No. 08-cv-03438, 2009 WL 4282086 (N.D. Cal. Nov. 25, 2009) ..................... 20

16

*Snoeck v. Brussa*
17      153 F.3d 984 (9th Cir. 1998) ........................................................................... 11

18    *Somberg v. McDonald*
      117 F.4th 375 (6th Cir. 2024) ............................................................................. 8

19

*Stand With US Ctr. for Legal Just. v. Mass. Inst. of Tech.*
20      158 F.4th 1 (1st Cir. 2025) ......................................................................... 14, 25

21    *Susan B. Anthony List v. Driehaus*
      573 U.S. 149 (2014) ...................................................................................... 4, 7

22

*Thomas v. Anchorage Equal Rts. Comm'n*
23      220 F.3d 1134 (9th Cir. 2000) ................................................................. 7, 10, 11

24    *Tingley v. Ferguson*
      47 F.4th 1055 (9th Cir. 2022) ....................................................................... 4, 14

25

*United Mine Workers v. Ill. State Bar Ass'n*
26      389 U.S. 217 (1967) .......................................................................................... 9

27    *United States v. Arizona*
      No. 10-cv-1413, 2010 WL 11405085 (D. Ariz. Dec. 10, 2010) ........................ 13

28

v

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*United States v. Missouri*
114 F.4th 980 (8th Cir. 2024).................................................................................... 9

*United States v. Stevens*
559 U.S. 460 (2010)................................................................................................. 23

*Valle del Sol Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013)................................................................................. 17

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*
455 U.S. 489 (1982)...............................................................................14, 16, 17

*Walls v. Sanders*
144 F.4th 995 (8th Cir. 2025).................................................................................. 20

*Whole Woman's Health v. Jackson*
595 U.S. 30 (2021)............................................................................................... 9, 12

*Winter v. Nat. Res. Def. Council, Inc.*
555 U.S. 7 (2008).......................................................................................................... 3

*Wisconsin v. Mitchell*
508 U.S. 476 (1993)................................................................................................. 24

*Yamada v. Snipes*
786 F.3d 1182 (9th Cir. 2015)................................................................................. 14

**STATUTES**

Assemb. B. 715, 2025–26 Reg. Sess. (Cal. 2025)........................................... passim

Assemb. B. 821, 2025–26 Reg. Sess. (Cal. 2025)................................................... 18

Cal. Educ. Code
§ 220.................................................................................................1, 2, 15, 17
§ 244.......................................................................................................2, 18, 21
§ 51225.3..................................................................................................... 18
§ 51500.......................................................................................................3, 18, 21
§ 51926......................................................................................................... 18
§ 60044......................................................................................................... 18
§ 60045......................................................................................................... 18

S.B. 48, 2025–26 Reg. Session (Cal. 2025)................................................................. 3

**OTHER AUTHORITIES**

Andrew Atterbury, *New Florida teaching standards say African Americans received some 'personal benefit' from slavery*, POLITICO (May 29, 2024),
politico.com/news/2023/07/20/florida-black-history-teaching-standards-00107067............... 18

vi

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3    Donald Yacovone, *Teaching White Supremacy: America's Democratic Ordeal and the Forging of Our National Identity* (2022)................................................................................. 17

4

Montana Office of Public Instruction, *Evaluating American Indian Materials and Resources for the Classroom* (2015), https://bit.ly/4iqP23t ............................................................ 17

5

6    *U.S. National Strategy to Combat Antisemitism* (May 25, 2023), https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/05/U.S.-National-Strategy-to-Counter-Antisemitism.pdf.................................................................................. 5, 6

7

8    **REGULATIONS**

9    Cal. Code Regs., tit. 5, § 4600 et seq. .......................................................................... 8

10    Cal. Code Regs., tit. 5, § 9810............................................................................... 17

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs seek to enjoin the implementation of Assembly Bill 715 (AB 715), a law that aims to prevent an antisemitic school environment. *See* Assemb. B. 715, 2025–26 Reg. Sess. (Cal. 2025), § 1(h). Plaintiffs argue that AB 715 is unconstitutionally vague, overbroad, and viewpoint discriminatory. However, Plaintiffs' complaint and motion for preliminary injunction are not based on the plain language of this new law, which simply builds on long-standing state law prohibiting "discrimination on the basis of" enumerated characteristics, *see* Cal. Educ. Code § 220, establishes state-level resources to identify and prevent antisemitism, and strengthens remedies to address instances of substantiated discrimination, including the creation of specific remedies for instances that involve antisemitism. Plaintiffs' apparent argument that AB 715 creates a new, and undefined, type of civil rights violation that may subject them to discipline is contradicted by the statute's plain text. To the extent their claims rest on their belief that private individuals or organizations may file unfounded complaints against them, such speculation that third parties may misconstrue a valid antidiscrimination law is not justification for enjoining it, particularly because that could occur just as easily under existing law and, according to Plaintiffs, already does. Plaintiffs' motion should be denied for the following reasons.

First, Plaintiffs lack standing because they have not established any injury attributable to AB 715. AB 715 does not restrict Plaintiffs' desired speech; any harm to Plaintiffs from third-party complainants is not traceable to AB 715; and this lawsuit cannot remedy Plaintiffs' alleged injury (unfounded antisemitism complaints) because any such complaints might occur regardless of whether AB 715 is enjoined.

Second, Plaintiffs' claims are not ripe. Plaintiffs seek to strike down a law based on vagueness and overbreadth, but California has not yet even created the institutions and resources that will refine and effectuate that law. Indeed, the only agency whose work may be informed by a specific definition of antisemitism under AB 715—the Office of Civil Rights—does not even exist yet, and in any event that agency is not responsible for adjudicating alleged violations of the Education Code's discrimination provisions.

Third, even if Plaintiffs had standing and a ripe claim, the Court lacks the power to enjoin

1

1  the Governor and Attorney General because they have no connection to the enforcement of AB

2  715, and therefore possess sovereign immunity from suit.

3      Finally, even if Plaintiffs had justiciable claims, their motion must be denied in full because

4  Plaintiffs are not likely to succeed on the merits. AB 715 is not unconstitutionally vague because

5  it does not create a new basis for civil rights violations involving antisemitism, as Plaintiffs

6  appear to suggest, but instead builds on lawful language used in other longstanding California

7  antidiscrimination statutes. Additionally, AB 715 does not violate the First Amendment because it

8  implicates only government speech, serves the legitimate pedagogical goal of ensuring that

9  students have a discrimination-free learning environment, and is sufficiently tailored to achieve

10  the substantial government interest of protecting students from discrimination.

11                          **OVERVIEW OF AB 715**

12      California enacted AB 715 because "Jewish and Israeli American pupils across California

13  are facing a widespread surge in antisemitic discrimination, harassment, and bullying . . . so

14  severe and pervasive that it has placed Jewish pupils at risk and limited, or completely impeded,

15  their ability to learn or engage in school programs or activities." AB 715 § 1(c).[1] AB 715 seeks to

16  protect students from an "antisemitic school environment," which is "a school environment that

17  subjects pupils or employees who are, or are perceived to be, Jewish or Israeli to harassment,

18  discrimination, or violence based on their religion, nationality, race, or ethnicity." *Id.* § 1(h).

19      Longstanding California law prohibits "discrimination on the basis of disability, gender,

20  gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or

21  any other characteristic that is contained in the definition of hate crimes set forth in Section

22  422.55 of the Penal Code, including immigration status, in any program or activity conducted by

23  an educational institution that receives, or benefits from, state financial assistance, or enrolls

24  pupils who receive state student financial aid." Cal. Educ. Code § 220. The Education Code also

25  prohibits specific types of discrimination in schools premised on section 220's protected

26  categories, *see, e.g.*, *id.* § 244 (prohibiting instructional materials that "subject a pupil to unlawful

27  ────────────────────

28      [1] Plaintiffs do not dispute that antisemitism exists in schools, nor that preventing
antisemitism is a legitimate legislative purpose.

2

1    discrimination pursuant to [s]ection 220"); *id.* § 51500 (prohibiting instruction that "promotes a

2    discriminatory bias on the basis of . . . a characteristic listed in [s]ection 220"), and Plaintiffs do

3    not challenge these other statutes.

4         AB 715 supports these longstanding antidiscrimination statutes in several ways. Consistent

5    with preexisting laws, it further clarifies the prohibition on the use of instructional materials,

6    professional development materials, and curriculum that would subject students to unlawful

7    discrimination under section 220 or that are factually inaccurate. *See* AB 715 §§ 2, 7–8. AB 715

8    also creates an Office of Civil Rights to address all forms of discrimination, which will employ an

9    "Antisemitism Prevention Coordinator" (to be appointed by the Governor and confirmed by the

10   Senate) who will develop resources and provide education, make recommendations and reports,

11   work with community stakeholders, and engage with school districts concerning antisemitism in

12   public schools. *See id.* § 5.[2] AB 715 also establishes that prohibited discrimination in instruction

13   and school-sponsored activities does not require members of a protected group to be present

14   while the discriminatory bias is occurring for the act to be considered discriminatory. *See id.* § 7.

15   Finally, it clarifies the forms of corrective action that may or must be provided if the California

16   Department of Education sustains a finding of discrimination via an established complaint

17   process, including a specific remedy that may be ordered if a sustained finding "involves

18   antisemitism." *See id.* §§ 9, 10.

19        AB 715's provisions are severable. *Id.* § 11.

20                                     **LEGAL STANDARD**

21        Plaintiffs "seeking a preliminary injunction must establish that [they are] likely to succeed

22   on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief,

23   that the balance of equities tips in [their] favor, and that an injunction is in the public interest."

24   *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). When the government is a party, the

25   last two *Winter* factors (the equities and public interest) merge. *E. Bay Sanctuary Covenant v.*

26   *Biden,* 993 F.3d 640, 668 (9th Cir. 2021). In the Ninth Circuit, a plaintiff may also obtain a

27   ───────────────────

28        [2] SB 48, signed concurrently with AB 715, creates additional Coordinators to address
     other enumerated types of discrimination. *See* S.B. 48, 2025–26 Reg. Session (Cal. 2025).

                                           3

1    preliminary injunction under a "sliding scale" approach by raising "serious questions" going to

2    the merits of their claims and showing that the balance of hardships tips "sharply" in their favor.

3    *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018).

4                                    **ARGUMENT**

5    **I.    PLAINTIFFS LACK STANDING**

6          Plaintiffs have the burden of establishing the irreducible constitutional minimum of

7    standing, which contains three elements. First, the plaintiff must have suffered an injury in fact—

8    an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual

9    or imminent, not conjectural or hypothetical. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

10   (1992). Second, there must be a causal connection between the injury and the conduct complained

11   of—the injury has to be fairly traceable to the challenged action, and not the result of the

12   independent action of a third party not before the court. *Id.* Third, it must be likely, as opposed to

13   speculative, that the injury will be redressed by a favorable decision. *Id.* at 561.

14         **A.    Plaintiffs Have Not Established Injury**

15         Plaintiffs base their alleged injury on the future enforcement of AB 715, *see generally* ECF

16   No. 1 ("Compl."), and therefore a court must analyze Plaintiffs' claims under the framework for

17   pre-enforcement standing. *See Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024)

18   ("Pre-enforcement standing injuries are predicated on the anticipated enforcement of the

19   challenged statute in the future and the resulting chilling effect in the present.").

20         *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("*Driehaus*") sets the

21   "standard for pre-enforcement standing." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir.

22   2022). "Under *Driehaus*, a plaintiff demonstrates injury-in-fact by showing '[1] an intention to

23   engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed

24   by a statute, and [3] there exists a credible threat of prosecution thereunder.'" *Planned*

25   *Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024);

26   *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) ("Even in the First

27   Amendment context, a plaintiff must show a credible threat of enforcement."); *Laird v. Tatum*,

28   408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a

                                            4

1    claim of specific present objective harm or a threat of specific future harm[.]").

2         Plaintiffs fail to meet the second and third *Driehaus* factors.

3              **1.    Plaintiffs Do Not Intend to Engage in Proscribed Conduct**

4         Plaintiffs' alleged injury stems from an unsupported and unreasonable interpretation of AB

5    715, which does not prohibit their desired speech. Plaintiffs do not argue that AB 715, on its face,

6    bars teachers from critiquing Israel, supporting Palestinian causes, or providing factually accurate

7    instruction. *See* ECF No. 15 ("Mot.") at 4–6 (arguing that AB 715 prevents criticism of Israel by

8    failing to define antisemitism). Plaintiffs argue instead that, by referencing the U.S. National

9    Strategy to Combat Antisemitism ("National Strategy"),[3] a 60-page document, which in turn

10   references the International Holocaust Remembrance Alliance ("IHRA")'s non-legally binding

11   working definition of antisemitism, AB 715 restricts teachers' ability to critique Israel and

12   support Palestinian causes. Mot. at 6.

13        First, the only operative section of the bill referencing the National Strategy establishes an

14   Antisemitism Prevention Coordinator, with enumerated duties generally designed "to identify,

15   respond to, prevent, and counter antisemitism." *See* AB 715 § 5 (creating Cal. Educ. Code §

16   33803.1). None of those enumerated tasks involve adjudicating antidiscrimination complaints.

17   *See id.* And AB 715 does not, in any way, amend or modify section 220 and other existing

18   sections of the Education Code that set forth the governing antidiscrimination protections for K-

19   12 education settings. To the contrary, the bill states that the function of the Office of Civil

20   Rights—the agency housing the Antisemitism Prevention Coordinator—is to "work directly with

21   local educational agencies to prevent and address discrimination and bias pursuant to [s]ection

22   220," and tasks the Office with several duties related to combatting discrimination as defined by

23   section 220. *See id.* (creating Cal. Educ. Code §§ 33801(c), 33802). To the extent Plaintiffs

24   suggest that the Coordinator's education and training of school personnel and others about

25   antisemitism *may* inform how existing antidiscrimination protections are interpreted and

26   enforced, that type of strained and hypothetical argument is insufficient to support a pre-

27   _____

28   [3] Available at https://bidenwhitehouse.archives.gov/wp-content/uploads/2023/05/U.S.-
     National-Strategy-to-Counter-Antisemitism.pdf.

                                           5

1   enforcement facial challenge. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)

2   ("highly speculative fear" that government will exercise its authority in a particular way does not

3   support standing).

4        Additionally, Plaintiffs contend that the National Strategy and the IHRA definition it

5   references conflate antisemitism with criticism of Israel or Zionism. Mot. at 1. However, AB 715

6   does not incorporate any specific definition of antisemitism from the National Strategy. It merely

7   provides that the National Strategy "shall be a basis to inform" the Coordinator's work. *See* AB

8   715 § 5 (creating Cal. Educ. Code § 33803.1(c)). The National Strategy contains numerous tools

9   and resources that the Coordinator could use to advance its statutory charge, without relying on

10  any definition in that 60-page document. Plaintiffs' argument that a definition will be used at all,

11  much less used in a particular way, is entirely speculative.

12       Moreover, Plaintiffs overstate what the National Strategy contains. The National Strategy

13  provides the following definition of antisemitism: "Antisemitism is a stereotypical and negative

14  perception of Jews, which may be expressed as hatred of Jews. It is prejudice, bias, hostility,

15  discrimination, or violence against Jews for being Jews or Jewish institutions or property for

16  being Jewish or perceived as Jewish. Antisemitism can manifest as a form of racial, religious,

17  national origin, and/or ethnic discrimination, bias, or hatred; or, a combination thereof." National

18  Strategy at 13. The National Strategy provides several examples of antisemitism, including when

19  Jewish people are "*targeted for derision and exclusion on college campuses*, often because of

20  their real or perceived views on the State of Israel," and "when Israel is singled out *because of*

21  *anti-Jewish hatred.*" *Id.* at 9 (emphasis added). This language does not equate criticism of Israel

22  with antisemitism, but rather explains that such criticism can serve as a front for antisemitic bias

23  and can be used to directly discriminate against Jewish *individuals*. *See generally id.* While this

24  can be a nuanced distinction, it is an important one.

25       Simply put, Plaintiffs' desired speech (Mot. at 6–12, Compl. ¶¶ 53–186, ECF Nos. 15-2–

26  15-9) does not fall within the operative provisions of AB 715. Nothing in AB 715 prohibits the

27  teaching of *The Great Gatsby*; celebrating Palestinian food and dance; criticism of Israel; science

28  projects about food safety and water distillation related to Gaza; or any of the other conduct

6

1    Plaintiffs reference. *See* Mot. at 6, 10–12. Because AB 715 does not proscribe speech that is not

2    already potentially actionable under California's *existing* civil rights statutes, Plaintiffs cannot

3    identify any speech they intend to engage in that is proscribed by AB 715 and therefore lack

4    standing to challenge it.

5                    **2.    Plaintiffs Are Not Subject to a Threat of Enforcement**

6           To evaluate the threat of enforcement, courts in the Ninth Circuit consider "(1) whether the

7    plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have

8    'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a

9    'history of past prosecution or enforcement.'" *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir.

10   2023) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)).

11          Plaintiffs lack a concrete plan to violate the law because, as just discussed, none of their

12   desired speech violates AB 715. Plaintiffs also fail to identify any threat of enforcement by

13   Defendants, nor do they provide any evidence suggesting Defendants will interpret the law in the

14   way they fear, instead pointing solely to potential actions of third parties. *Cf. Driehaus*, 573 U.S.

15   at 164 (finding credible threat of enforcement where enforcing agency had previously sustained a

16   complaint against the plaintiff brought under the challenged statute and "future complainants"

17   could rely upon that finding). Accordingly, Plaintiffs fail to demonstrate the injury-in-fact

18   required to establish pre-enforcement standing. *See Planned Parenthood*, 122 F.4th at 836.

19                    **B.    Plaintiffs Have Not Alleged a Harm Traceable to AB 715**

20          Given that Plaintiffs are not arguing for a right to speech that AB 715 restricts, their

21   grievance appears to be that "anyone with the wherewithal to file a complaint" may accuse

22   teachers of being antisemitic if a lesson is "perceive[d] as critical of Israel or Zionism." Mot. at 2;

23   *see also id.* ("the new law exposes Teacher Plaintiffs to charges of unlawful discrimination").[4]

24   Plaintiffs' theory runs counter to "a bedrock principle that a federal court cannot redress injury

25   that results from the independent action of some third party not before the court." *Murthy v.*

26

27          ⁴ To the extent Teacher Plaintiffs assert that they would be "subject to discipline"
     following third-party complaints (*see, e.g.*, Mot. at 3), they have not sufficiently alleged that
28   injury because none of their expected future conduct runs afoul of AB 715. *See supra*.

1    *Missouri*, 603 U.S. 43, 57 (2024) ("*Murthy*") (citation modified).

2         Plaintiffs "have not shown that they are likely to face a risk of future censorship traceable

3    to" AB 715. *See id.* at 73. We know this because the motion is replete with examples of charges

4    of antisemitism *predating* AB 715, which was first introduced in February 2025. *See., e.g.*, Mot.

5    at 8–12; ECF No. 15-2 ¶¶ 20–23; No. 15-4 ¶ 13; No. 15-5 ¶¶ 9–10, 18, 20–25; No. 15-6 ¶ 15–16.

6    Those complaints were presumably brought under existing antidiscrimination laws, which AB

7    715 does not modify, and which Plaintiffs do not challenge. "In these circumstances, [Plaintiffs]

8    cannot rely on 'the predictable effect of Government action on the decisions of third parties';

9    rather, [they] can only 'speculate about the decisions of third parties.'" *See Murthy*, 603 U.S. at

10   72 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)) (alteration adopted); *see also*

11   *id*. ("It is no more than conjecture to assume that [plaintiffs] will be subject to [government]-

12   induced content moderation.") (citation modified). "Even before the defendants entered the scene,

13   the plaintiffs had a similar incentive to engage in self-censorship" based on third parties'

14   allegedly improper prior complaints, and it is therefore "difficult to see how the plaintiffs' self-

15   censorship can be traced to" AB 715. *See id.* at 73 (citation modified); *see also Clapper*, 568 U.S.

16   at 409–10 (speculation about the unfettered choices made by independent actors not before the

17   court does not establish Article III standing); *Somberg v. McDonald*, 117 F.4th 375, 381 (6th Cir.

18   2024) (under *Murthy*, "when one party encourages a second actor to take some adverse action

19   against a plaintiff, the plaintiff doesn't have standing if the second actor retains a degree of

20   independent judgment").

21         In short, with or without AB 715, third parties may rightfully or wrongfully accuse school

22   employees of antisemitism. California's Uniform Complaint Procedure, which long predates AB

23   715, sets forth "administrative procedures for resolving grievances regarding an alleged violation

24   by a local agency," including "the filing of complaints which allege unlawful discrimination." *See*

25   *Collins v. Thurmond,* 41 Cal. App. 5th 879, 912 (2019); *see also* Cal. Code Regs., tit. 5, § 4600 et

26   seq. The governing regulations are already broadly permissive in describing who may bring a

27   claim. *See* Cal. Code Regs., tit. 5, § 4630(c) (allowing any individual who has experienced

28   discrimination, believes a class of people has experienced discrimination, or represents a student

8

1    who has been discriminated against to file a complaint under the Uniform Complaint Procedure).

2         Indeed, although Plaintiffs may not like these third-party allegations against teachers,

3    students' and parents' "right to seek redress from the [California Department of Education]"

4    through the Uniform Complaint Procedure "is clearly a constitutionally-protected freedom" under

5    the Petition Clause. *See C.T. v. Vacaville Unified Sch. Dist.*, No. 06-cv-197, 2006 WL 2092613,

6    at *10 (E.D. Cal. July 27, 2006) (citing *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S.

7    217, 222 (1967)).

8         Thus, Plaintiffs' alleged possible future injury from third parties exercising their

9    Constitutional right to allege violations of the state's preexisting antidiscrimination laws cannot

10    be traced to AB 715.

11    **C.    Plaintiffs' Alleged Harm Is Not Redressable by the Injunction Sought**

12         Nor could this lawsuit redress any such alleged injury. "To determine whether an injury is

13    redressable," courts "consider the relationship between the judicial relief requested and the injury

14    suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation modified).

15         Here, even if the Court enjoins enforcement of AB 715, independent complainants remain

16    free to make allegations of antisemitism under preexisting law. Those third parties are "not parties

17    to the suit, and there is no reason they should be obliged to honor an incidental legal

18    determination the suit produced." *Murthy*, 603 U.S. at 73–74 (quoting *Lujan*, 504 U.S. at 569);

19    *see also Haaland v. Bracken*, 599 U.S. 255, 261 (2014) (same). Enjoining AB 715 would not

20    enjoin the actions of third parties causing Plaintiffs' alleged injury. *See United States v. Missouri*,

21    114 F.4th 980, 985 (8th Cir. 2024) (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44

22    (2021)) ("A federal court cannot enjoin private citizens who are not parties to the case on the

23    grounds that they may someday file a [complaint] under the [challenged law].").

24         As the Supreme Court recently explained, redressability "requires that the court be able to

25    afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring

26    effect of the opinion *explaining* the exercise of its power . . . Otherwise, redressability would be

27    satisfied whenever a decision might persuade actors who are not before the court[.]" *Haaland*,

28    599 U.S. at 294. "It is a federal court's judgment, not its opinion, that remedies an injury; thus, it

9

1    is the judgment, not the opinion, that demonstrates redressability." *Id.* Here, Plaintiffs "can hope

2    for nothing more than an opinion," and therefore "cannot satisfy Article III." *Id.*

3    **II.    PLAINTIFFS' CLAIMS ARE NOT RIPE**

4        "Prudential ripeness turns on two considerations: (1) the fitness of the issues for judicial

5    decision, and (2) the hardship to the parties of withholding court consideration."[5] *Flaxman v.*

6    *Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025) (citation modified).

7        The issues Plaintiffs raise are not yet fit for judicial decision because crucial aspects of the

8    statutory scheme (including the only statutory provision that references "antisemitism") have not

9    yet gone into effect, nor will they be immediately implemented come January 1, 2026. *See* Decl.

10   of Undersecretary Christine Hironaka ¶¶ 4–8. Of particular relevance, AB 715 requires the yet-to-

11   be-created Office of Civil Rights and its yet-to-be-appointed Antisemitism Prevention

12   Coordinator to provide resources for addressing antisemitism. For example, the Coordinator is

13   charged with "provid[ing] antisemitism education to teachers, staff, governing board or body

14   members, administrators, and other local educational agency personnel to *identify* and proactively

15   prevent antisemitism." *See* AB 715 § 5 (creating Cal. Educ. Code § 33803.1(b)(1)) (emphasis

16   added). This agency—which "is not yet functioning or performing its intended purposes," *see*

17   Hironaka Decl. ¶¶ 4–8—has "not yet had an opportunity" to implement AB 715, which "militates

18   in favor of declining jurisdiction." *See Alaska Right to Life Pol. Action Comm. v. Feldman*, 504

19   F.3d 840, 850 (9th Cir. 2007). "Courts have regularly declined on prudential grounds to review

20   challenges to recently promulgated laws . . . in favor of awaiting an actual application of the new

21   [law]." *See Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir.

22   2012) (collecting cases). This is because to exercise review at this premature stage would require

23   the Court to imprudently "hypothesize about how the law might be applied." *See id.* at 838.

24       The second element of prudential standing "dovetails, in part, with the constitutional

25   consideration of injury. Although the constitutional and prudential considerations are distinct, the

26

27       ――――――――――――――――――
         [5] In the pre-enforcement context, constitutional ripeness "overlaps with the analysis of
28   'injury in fact' for Article III standing" and thus need not be separately addressed. *See Project*
     *Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025); *see also Thomas*, 220 F.3d at 1139.

                                                    10

1    absence of any real or imminent threat of enforcement . . . seriously undermines any claim of

2    hardship." *Thomas*, 220 F.3d at 1142. As discussed above, there is no threat of enforcement.

3    Delaying adjudication of this matter therefore will not prejudice Plaintiffs' ability to vindicate

4    their rights if the enforcement they fear does actually come to fruition. For these reasons, the

5    Court should decline to decide Plaintiffs' motion as unripe.

6    **III.   THE COURT LACKS JURISDICTION TO ENJOIN THE GOVERNOR AND ATTORNEY**
        **GENERAL DUE TO SOVEREIGN IMMUNITY**
7

8        Even assuming Plaintiffs had standing and ripe claims, the Governor and Attorney General

9    must be dismissed based on their sovereign immunity under the Eleventh Amendment.

10        "Absent abrogation, the Eleventh Amendment prohibits federal and state courts from

11   entertaining suits against unconsenting states and their instrumentalities. However, suits seeking

12   prospective relief under federal law may ordinarily proceed against state officials sued in their

13   official capacities." *Planned Parenthood*, 122 F.4th at 841–42 (citing *Ex parte Young*, 209 U.S.

14   123, 157 (1908)). For this exception to apply, the official must have a "fairly direct" connection

15   with enforcement of the challenged statute. *See Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir.

16   1998). "[A] generalized duty to enforce state law or general supervisory power over the persons

17   responsible for enforcing the challenged provision will not subject an official to suit." *Id.*

18        The Governor has no role in enforcing AB 715. Rather, AB 715 vests him only with the

19   power to appoint two officials to the Office of Civil Rights. *See* AB 715 § 5 (creating Cal. Educ.

20   Code § 33801(b), 33803.1(a)). This is an insufficient connection to enforcement of the challenged

21   provisions of AB 715 to subject the Governor to suit under *Ex parte Young*. *Compare*

22   *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469–70 (9th Cir.

23   1999) (governor retained sovereign immunity where an independent commission, the members of

24   which were appointed by governor, enforced the challenged statute) *with L.A. Cnty. Bar Ass'n v.*

25   *Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (in challenge to statute controlling judicial appointments,

26   governor's appointment of judges constituted sufficient connection to overcome sovereign

27   immunity).

28        The Attorney General is similarly immune from suit, as Plaintiffs cannot point to "any

11

1   enforcement authority the [A]ttorney [G]eneral possesses in connection with [AB 715] that a

2   federal court might enjoin him from exercising." *See Whole Woman's Health*, 595 U.S. at 43.

3       Because the Eleventh Amendment deprives this Court of jurisdiction over Governor

4   Newsom and Attorney General Bonta, they must be dismissed from this action. *See Ass'n des*

5   *Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)

6   (dismissing defendants with sovereign immunity at preliminary injunction stage).

7   **IV.   PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS**

8       Even assuming Plaintiffs had justiciable claims, their motion must be denied in full because

9   they are not likely to succeed on the merits. AB 715 is neither unconstitutionally vague nor

10  violative of the First Amendment.

11      **A.   AB 715 Is Not Unconstitutionally Vague**

12      "It is a basic principle of due process that an enactment is void for vagueness if its

13  prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

14  Where a challenged statute "clearly implicates" First Amendment rights, the statute will be

15  subject to a "more stringent" vagueness analysis. *See Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271

16  F.3d 1141, 1149–50 (9th Cir. 2001).

17      As discussed in greater detail below, AB 715 does not implicate protected speech because

18  teachers have no First Amendment right to dictate curriculum, and AB 715 serves a legitimate

19  pedagogical interest in ensuring students will have a learning environment free of discrimination.

20  *See id.* at 1154 ("[I]n the context of curriculum presentation, it is the state's pedagogical interests

21  that take clear precedence over the teachers' First Amendment interests."); *Frederickson v. San*

22  *Diego Cnty. Bd. of Supervisors*, No. 21-cv-1958, 2022 WL 485003, at *3 (S.D. Cal. Feb. 16,

23  2022) (facial vagueness challenge implicating "government speech" was "without merit"). As a

24  result, any vagueness in AB 715 is "less likely to jeopardize First Amendment values." *See Cal.*

25  *Tchrs. Ass'n*, 271 F.3d at 1154. Accordingly, AB 715 is subject to an ordinary vagueness

26  analysis. *See id.* at 1150.

27      Regardless of the level of scrutiny applied to AB 715, the challenged terms do not render

28  the statute vague for the following reasons.

12

1          **1.    AB 715's Use of the Term "Antisemitism" Does Not Apply to**
2          **Teachers' Conduct**

3          As a threshold matter, Plaintiffs' claim rests on concerns about potential discipline.

4   However, as discussed in detail above, AB 715 does not create a new civil rights violation tied to

5   "antisemitism," but instead strengthens existing antidiscrimination statutes. AB 715 simply does

6   not alter the conduct that may subject teachers to discipline, nor the standard that applies to

7   determine whether a violation is substantiated. The alleged ambiguity regarding "antisemitism" is

8   relevant only to the work of the yet-to-be-established Coordinator, who has no role in

9   adjudicating civil rights violations. There is a complete mismatch between the statutory text

10  Plaintiffs criticize and the enforcement Plaintiffs seek to enjoin.

11         Moreover, the references to antisemitism that Plaintiffs take issue with are only in the

12  precatory statements preceding AB 715's substantive amendments. AB 715's precatory

13  provisions express legislative intent, but they "do not in themselves create individual rights or, for

14  that matter, any enforceable law." *See Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007); *see*

15  *also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 441 (1987) (contrasting mandatory and

16  "precatory" provisions of a statute); *United States v. Arizona*, No. 10-cv-1413, 2010 WL

17  11405085, at *6 (D. Ariz. Dec. 10, 2010) (a court "cannot enjoin a purpose; the . . . Legislature is

18  free to express its viewpoint and intention as it wishes," but legislative intent "has no operative

19  function"). Expressions of legislative intent do not "define the prohibited conduct," but rather

20  "merely explain the context in which the prohibition applies." *See Høeg v. Newsom*, 652 F. Supp.

21  3d 1172, 1189 (E.D. Cal. 2023) (citing *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th

22  Cir. 2005)). This vitiates Plaintiffs' vagueness concerns.

23         **2.    "Antisemitism" is Adequately Defined**

24         Plaintiffs argue primarily that AB 715 is vague because it fails to define the term

25  "antisemitism," Mot. at 14–15, and therefore does not "give the person of ordinary intelligence a

26  reasonable opportunity to know what is prohibited, so that he may act accordingly," *see Grayned*,

27  408 U.S. at 108. "The operative question under the fair notice theory is whether a reasonable

28

13

1    person would know what is prohibited by the law." *Tingley*, 47 F.4th at 1089.[6]

2            Even if a definition of antisemitism were relevant to potential discipline for violating

3    California's existing civil rights laws, AB 715's legislative findings provide that "[a]n antisemitic

4    school environment means a school environment that subjects pupils or employees who are, or

5    are perceived to be, Jewish or Israeli to harassment, discrimination, or violence based on their

6    religion, nationality, race, or ethnicity." AB 715 § 1(h). AB 715 further states that "antisemitic

7    discrimination may be classified as discrimination on the basis of religion, national origin,

8    ethnicity, or some combination of these factors." *Id.* § 1(j).

9            "Where, as here, plaintiffs make a facial constitutional challenge to a state law, 'a federal

10    court must, of course, consider any limiting construction that a state court or enforcement agency

11    has proffered.'" *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1103 (9th Cir. 2015)

12    (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982)).

13    Although the language quoted above appears in the legislative intent section rather than the

14    amendments to the Education Code, AB 715 nonetheless makes clear that antisemitism can be

15    understood as "harassment, discrimination, or violence" against students or employees "who are,

16    or are perceived to be, Jewish or Israeli," and can take the form of discrimination on the basis of

17    "religion, national origin, ethnicity, or some combination of these factors." *See* AB 715 §§ 1(h),

18    (j). AB 715 is "readily susceptible" to this limiting construction, which should therefore be

19    adopted by the Court. *See Yamada v. Snipes*, 786 F.3d 1182, 1188 (9th Cir. 2015).

20            AB 715's conception of antisemitism aligns with standard dictionary definitions. *See*

21    *Butcher v. Knudsen*, 38 F.4th 1163, 1173 (9th Cir. 2022) (courts may consider dictionary

22    definitions in determining whether a statutory term is vague). For example, the First Circuit

23    recently recognized that Merriam-Webster Dictionary defines antisemitism as "hostility toward or

24    discrimination against Jews as a religious, ethnic, or racial group." *See Stand With US Ctr. for*

25    *Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 17 n.13 (1st Cir. 2025). While AB 715

26

27            [6] While a law can also be void for vagueness because it "is so standardless that it
       authorizes or encourages seriously discriminatory enforcement," *see United States v. Williams*,
28    553 U.S. 285, 304 (2008), Plaintiffs do not argue that AB 715 falls into that category.

14

additionally incorporates Israeli individuals as possible targets of antisemitism, that inclusion is not constitutionally problematic. AB 715 states that Israeli *people* may not be subject to discrimination based on their religion, nationality, or ethnicity. AB 715's conception of antisemitism relies upon a standard prohibition against discrimination comprehensible by a reasonable person and does not target political *speech*.

Crucially, AB 715 amends sections of the Education Code that *already* reference section 220's prohibition on discrimination, and expressly incorporates section 220's standard for determining whether discrimination exists. *See, e.g.*, AB 715 § 2 (amending section 244 to add three provisions referencing section 220); *id.* § 7 (amending section 51500's existing requirement that teachers and school districts not "promote a discriminatory bias . . . pursuant to a characteristic listed in [s]ection 220"). Section 220, in turn, prohibits discrimination based on "disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other [protected] characteristic[.]" *See* Cal. Educ. Code § 220. This longstanding provision—which Plaintiffs do not challenge—both mirrors AB 715's understanding of antisemitism as "discrimination on the basis of religion, national origin, ethnicity, or some combination of these factors," *see* AB 715 § 1(j), and provides a well-established antidiscrimination mandate that constrains the meaning of the term "antisemitism" as used in AB 715.

Given AB 715's express reference to and incorporation of section 220, concluding that AB 715 is void for vagueness would necessarily render void section 220 and a litany of other similarly drafted antidiscrimination measures. *See Butcher*, 38 F.4th at 1176 ("[I]n assessing a vagueness challenge, [courts] must consider [state] law as a whole."). It cannot be the case that this type of broad prohibition on discrimination is unconstitutionally vague. As the Supreme Court has recognized, antidiscrimination statutes are "well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and they do not, as a general matter, violate the First or Fourteenth Amendments." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995).

Moreover, Section 1(d) of AB 715 provides "examples of the types of conduct to which

15

1    [it] applies," which further establishes that there is no vagueness. *See Hotel & Motel Ass'n of*

2    *Oakland v. City of Oakland*, 344 F.3d 959, 973 (9th Cir. 2003); *see also Good News Emp. Ass'n*

3    *v. Hicks*, 223 F. App'x 734, 736 (9th Cir. 2007) (policy prohibiting "discrimination and/or

4    harassment based on sexual orientation" and including illustrative examples was not vague); *Am.-*

5    *Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 609 (6th Cir. 2005) ("The

6    inclusion of examples further alleviates vagueness problems[.]"). Plaintiffs argue that these

7    examples of antisemitism and the reference to the National Strategy will chill speech, but a

8    chilling effect alone, assuming one exists, does not render a statute vague. *See Holder v.*

9    *Humanitarian L. Project*, 561 U.S. 1, 20 (2010).

10        Finally, as already discussed, AB 715 requires the Office of Civil Rights to provide

11    resources to aid in addressing antisemitism. *See* AB 715 § 5. These resources, "even if lacking the

12    force of law [themselves], can clarify what conduct is expected of a person subject to a particular

13    [measure] and thus mitigate against vagueness." *See Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*,

14    885 F.3d 560, 571 (9th Cir. 2018). Even in the pre-enforcement context, the fact that such

15    materials may be forthcoming alleviates vagueness concerns. *See Hoffman Ests.*, 455 U.S. at 504

16    (in pre-enforcement vagueness challenge, the possibility that the defendant "*may adopt*

17    administrative regulations that will sufficiently narrow potentially vague or arbitrary

18    interpretations" counseled against invalidating the challenged ordinance) (emphasis added).

19        It is true that AB 715 does not define antisemitism with exacting specificity. But "the

20    degree of vagueness that the Constitution allows depends in part on the nature of the enactment."

21    *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (citation modified). Determining what constitutes

22    discrimination is often nuanced and highly fact-dependent, and thus some amount of vagueness is

23    "an inherent, irreducible part" of any antidiscrimination provision. *See Good News*, 223 F. App'x

24    at 736; *see also Rose v. Locke*, 423 U.S. 48, 49–50 (1975); *Arce v. Douglas*, 793 F.3d 968, 988

25    (9th Cir. 2015) ("*Arce*") (terms "resentment toward a race or class of people" and "advocate

26    ethnic solidarity instead of the treatment of pupils as individuals" were not unconstitutionally

27    vague as used in state law that sought to "reduce racism in schools"). Through its statement of

28    legislative intent and incorporation of section 220, AB 715's references to antisemitism employ a

16

1    "comprehensible normative standard" typical of antidiscrimination statutes, *see Valle del Sol Inc.*

2    *v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013) (quoting *Hoffman Ests.*, 455 U.S. at 495 n.7), and

3    thereby provide sufficient notice of the bill's provisions.

4           **3.    Instructional Materials Constituting "Unlawful Discrimination" Are
               Easily Understood**

5

6           Plaintiffs next argue that AB 715 fails to explain its requirement that instructional

7    materials not subject students to "unlawful discrimination." Mot. at 15. This argument fails

8    because the challenged language predates the enactment of AB 715. AB 715 merely left intact an

9    existing prohibition on instructional materials that "subject a pupil to unlawful discrimination

10   pursuant to Section 220," *see* AB 715 § 2, which prohibits discrimination based on "disability,

11   gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual

12   orientation, or any other [protected] characteristic," *see* Cal. Educ. Code § 220.[7] As discussed

13   above, this type of broad language is a necessary feature of antidiscrimination statutes.

14          Plaintiffs' contention that the concept of discriminatory instructional material "is not

15   commonly understood," Mot. at 16, lacks credibility. *See Arce*, 793 F.3d at 984, 988 (state law

16   prohibiting categories of course content that legislators believed to promote racism was not

17   unconstitutionally vague). Written materials rather than spoken words can obviously constitute

18   discrimination. Indeed, education experts devote significant attention to analyzing and preventing

19   the use of discriminatory instructional materials in public schools,[8] and California has even

20   adopted regulations aimed at preventing the use of discriminatory materials in schools. *See* Cal.

21   Code Regs., tit. 5, § 9810. Discriminatory educational content has also been the subject of

22

23          [7] AB 715 amended subdivision (a) of section 244 only by adding "professional
     development materials" to the list of materials covered by the prohibition. AB 715 also clarified
24   the remedy schools must take if materials violate that prohibition and added an additional
     provision specific to professional development materials that mirrors the original subdivision (a).
25          [8] *See generally, e.g.*, Donald Yacovone, *Teaching White Supremacy: America's
26   Democratic Ordeal and the Forging of Our National Identity* (2022) (exploring how school
     textbooks have been used to reinforce white supremacist ideology since the 19th century);
27   Montana Office of Public Instruction, *Evaluating American Indian Materials and Resources for
     the Classroom* (2015), https://bit.ly/4iqP23t (analyzing how instructional materials can perpetuate
28   discriminatory bias and identifying resources to ensure materials are not discriminatory).

17

1    litigation and public discussion in recent years. *See, e.g.*, *Gender & Sexuality All. v. Spearman*,

2    No. 2:20-cv-00847, 2020 WL 1227345, at *1 (D.S.C. Mar. 11, 2020) (holding that South

3    Carolina law requiring LGBTQ+ topics to be taught only in the context of sexual health risks

4    violated Equal Protection rights of LGBTQ+ students); Andrew Atterbury, *New Florida teaching*

5    *standards say African Americans received some 'personal benefit' from slavery*, POLITICO (May

6    29, 2024), politico.com/news/2023/07/20/florida-black-history-teaching-standards-00107067. As

7    these examples illustrate, educators are well-equipped to understand the meaning of AB 715's

8    prohibition on discriminatory instructional materials.

9        AB 715's commonsense prohibition against discriminatory teaching materials is repeated

10   throughout several preexisting provisions of the Education Code. *See* Cal. Educ. Code §§ 243(a)–

11   (b), 244(a), 51500, 51501(a), 51225.3(a)(1)(G)(v)(II), 51926(c), 60044(a).[9] None of these seven

12   provisions that already bar discriminatory instructional materials have ever been legally

13   challenged, whether by these or other plaintiffs. Concluding that AB 715's nearly identical

14   prohibition is void for vagueness would effectively invalidate these existing provisions, which—

15   like AB 715—provide sufficient notice of what they prohibit.[10]

16       **4.    "Factually Accurate" Instruction is Not a Vague Term**

17       Plaintiffs finally take issue with the requirement that instruction be "factually accurate."

18   Mot. at 16.[11] However, Plaintiffs advance no argument as to why this provision is *vague*, instead

19   arguing only that certain factually accurate information might be deemed antisemitic and

20   therefore chilled. As the Supreme Court has explained, a "vagueness challenge does not turn on

21   whether a law applies to a substantial amount of protected expression." *Holder*, 561 U.S. at 20. A

22
23          [9] The cited provisions will remain in effect following forthcoming amendments by AB
     715 and other legislation. *See* AB 715 §§ 2, 8; Assemb. B. 821, 2025–26 Reg. Sess. (Cal. 2025).

24          [10] Plaintiffs rely heavily on *Høeg*, 652 F. Supp. 3d 1172. That case is inapposite. Unlike
     AB 715, the statute at issue in *Høeg*, *inter alia*, implicated the protected speech of private

25   physicians rather than government speech in public schools, used "grammatically incoherent"
     language, and provided no narrowing definitions, cross-references, or examples to clarify the

26   meaning of the challenged terms. *See id.* at 1186–87, 1189, & n.6.
          [11] Plaintiffs concede that the Education Code already required teaching materials to be

27   factually accurate, but take issue with the new requirement that "teachers' instruction" be
     factually accurate. *See* Mot. at 5. Education Code section 60045, for example, already requires

28   instructional materials to be "accurate" and "objective."

1    chill on speech, without more, does not establish vagueness. *See id.*

2        At bottom, AB 715 is characterized by "flexibility and reasonable breadth, rather than

3    meticulous specificity," and provides a reasonable person with fair notice of its terms. *See*

4    *Grayned*, 408 U.S. at 108, 110. Accordingly, AB 715 comports with Due Process and Plaintiffs

5    cannot establish a likelihood of success on the merits of their vagueness claim.

6        **B.    AB 715 Does Not Violate First Amendment Free Speech Rights**

7            **1.    Teachers Do Not Have a First Amendment Right to Dictate Curriculum**

8        Teachers do not have a First Amendment interest in controlling curriculum, as Teacher

9    Plaintiffs seek to do here. Rather, curriculum constitutes government speech. While Teacher

10   Plaintiffs frame it as an open question, the Ninth Circuit and Supreme Court have squarely

11   foreclosed their First Amendment claim. The balancing test established by *Pickering v. Board of*

12   *Education*, 391 U.S. 563 (1968)—not forum analysis—applies "where the government acts as

13   both sovereign *and employer*." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir.

14   2011) (emphasis in original) (collecting cases).

15       Under *Pickering*, courts consider "whether the plaintiff spoke on a matter of public

16   concern" and "whether the plaintiff spoke as a private citizen or public employee." *Id.* at 961. If a

17   plaintiff speaks as a public employee, then that speech is actually government speech to which the

18   First Amendment does not apply. *See id.* at 966–71; *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d

19   1003, 1015–16 (9th Cir. 2000). In *Johnson*, the Ninth Circuit held that teachers speak for the

20   government when acting in an official capacity, including during in-class instruction, because

21   their speech "owes its existence" to their positions as teachers. 658 F.3d at 966–71 (display of

22   religious quotes in classroom was not protected by the First Amendment). Indeed, it is "beyond

23   possibility for fairminded dispute" that a teacher's job duties include "speaking to [their] class in

24   [their] classroom during class hours" and therefore a teacher does "not act as a citizen" when

25   teaching students. *Id.* at 967 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006)); *cf. Kennedy*

26   *v. Bremerton Sch. Dist.*, 597 U.S. 507, 529–30 (2022) (coach acted in a private capacity because

27   "[h]e was not instructing players . . . or engaged in any other speech the District paid him to

28   produce as a coach"). Binding authority makes it abundantly clear that a teacher's instruction of

19

1   students is government speech. *See Johnson*, 658 F.3d at 966–71; *Downs*, 228 F.3d at 1015–16.

2        Because Teacher Plaintiffs' desired speech is government speech, their viewpoint

3   discrimination and overbreadth challenges necessarily fail. When a public school "is the speaker,

4   its control of its own speech is not subject to the constraints of constitutional safeguards and

5   forum analysis[.]" *Downs*, 228 F.3d at 1013; *see also Frederickson*, 2022 WL 485003, at *3

6   ("Plaintiffs fail to cite any evidence or supporting authority why the Resolution at issue would not

7   be considered government speech and therefore not subject to the First Amendment. In light of

8   this failure, Plaintiffs' . . . overbreadth arguments are also without merit."). A "public school

9   prescribing its curriculum . . . by its nature will facilitate the expression of some viewpoints

10  instead of others." *Downs*, 228 F.3d at 1013 (quoting *Ark. Educ. Television Comm'n v. Forbes*,

11  523 U.S. 666, 674 (1998)); *see also Rosenberger v. Univ. of Va.*, 515 U.S. 819, 834 (1995) ("A

12  holding that the University may not discriminate based on the viewpoint of private persons . . .

13  does not restrict the University's own speech which is controlled by different principles.").

14       The contrary authority cited by Plaintiffs is inapposite, dicta, or predated *Johnson*. *C.F. v.*

15  *Capistrano Unified School District*, for example, is inapposite. *C.F.* involved a claim of qualified

16  immunity by a teacher whose in-class statements were alleged to have violated the Establishment

17  Clause. 654 F.3d 975, 985–89 (9th Cir. 2011). *C.F.* did not analyze whether teachers have a First

18  Amendment interest in the curriculum taught, *see id.*, and is inapposite because the Establishment

19  Clause, unlike the Free Speech Clause, *does* apply to government speech. *See Walls v. Sanders*,

20  144 F.4th 995, 1003–04 (8th Cir. 2025) (citing, *inter alia*, *Pleasant Grove City v. Summum*, 555

21  U.S. 460, 468 (2009)). *California Teachers Association* was decided before *Johnson* and only

22  assumed arguendo that free speech protections applied to government speech; it did not resolve

23  the question. *See* 271 F.3d at 1148–49. And *Sheldon v. Dhillon*, which also predated *Johnson*,

24  involved the speech of a college professor, which is governed by a different analysis than that

25  applied to K-12 schools. *See* No. 08-cv-03438, 2009 WL 4282086, at *2–5 (N.D. Cal. Nov. 25,

26  2009); *Johnson*, 658 F.3d at 966 n.12 (the First Amendment "'academic freedom' carve-out

27  applie[s] to teachers at 'public colleges and universities,' not primary and secondary school

28  teachers") (citations omitted).

1  Simply put, Plaintiffs' free speech and overbreadth claims fail because "teachers have no

2  First Amendment right to influence curriculum as they so choose." *Downs,* 228 F.3d at 1015–16.

3  **2.    AB 715 Serves a Legitimate Pedagogical Interest**

4  Although students have a limited right to "receive information," *see Arce*, 793 F.3d at

5  988, that right is bounded by the State's "undoubted right to prescribe the curriculum for its

6  public schools," *see Epperson v. Arkansas*, 393 U.S. 97, 107 (1968). Thus, under *Hazelwood*

7  *School District v. Kuhlmeier* ("*Hazelwood*"), the government may restrict speech in schools in

8  furtherance of "legitimate pedagogical concerns." 484 U.S. 260, 272 (1988); *see also Arce*, 793

9  F.3d at 983 (a "state['s] limitations on school curricula" will be upheld "where they are

10  reasonably related to legitimate pedagogical concerns"). As a corollary of the legitimate

11  pedagogical interest test, the government may also "disassociate itself" from certain speech in the

12  school context, including speech that would "impinge upon the rights of other students" or is

13  "biased or prejudiced." *See Hazelwood*, 484 U.S. at 273.

14  Although Plaintiffs do not specify which provisions they are challenging, instead framing

15  their challenge as to AB 715 generally, the gravamen of Plaintiffs' motion appears to focus on

16  Education Code sections 244, 51500, and 51501, discussed above—all of which existed prior to

17  AB 715. The only substantive changes to these sections that Plaintiffs appear to take issue with

18  are the inclusion of professional development materials in section 244 and the requirement that

19  instruction and instructional materials be factually accurate and consistent with the standards of

20  professional responsibility in section 51501. None of these provisions rely on or reference any

21  definition of antisemitism, nor do they say anything about the Israel-Palestine conflict.

22  These provisions do, however, serve the legitimate pedagogical interest of ensuring that

23  students are able to learn without being subject to discrimination and to receive instruction and

24  instructional materials that are factually accurate. As amended, section 244 of the Education Code

25  will prohibit materials that "would subject a pupil to unlawful discrimination"; section 51500 will

26  prohibit instruction that "promotes a discriminatory bias" on the basis of protected characteristics;

27  and section 51501 will prohibit instructional materials that "contain any matter reflecting

28  adversely upon persons on the basis" of protected characteristics. *See AB 715 §§ 2, 7, 8.*

21

1   Courts have also applied *Hazelwood* to uphold policies requiring that materials be

2   factually accurate. For example, the Eleventh Circuit has explained that "[w]hatever else it

3   prohibits, the First Amendment does not forbid [the removal of] a book because it contains

4   factual inaccuracies, whether they be of commission or omission. There is no constitutional right

5   to have books containing misstatements of objective facts shelved in a school library." *Am. C.L.*

6   *Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1202 (11th Cir. 2009); *see also*

7   *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 871 (1982) (books

8   may be constitutionally removed based on "educational suitability"); *Hazelwood*, 484 U.S. at 271

9   (schools may "disassociate" themselves from speech that is "inadequately researched" or

10  "unsuitable"). And as Ninth Circuit precedent establishes, this reasoning applies equally to

11  classrooms and curricula. *See Arce*, 793 F.3d at 983.

12  AB 715's amendments to sections 51500(b) and 51501(b) of the Education Code satisfy

13  *Hazelwood*'s legitimate pedagogical interest requirement by ensuring that instruction and

14  instructional materials are "factually accurate." *See* AB 715 §§ 7, 8. Although Plaintiffs express

15  concern that this standard may be applied to fictional works, following Plaintiffs' argument could

16  lead to the incorrect conclusion that AB 715 prohibits the instruction of *all* fictional books. That

17  necessarily would be inconsistent with the stated legislative intent of strengthening anti-

18  discrimination measures and preventing antisemitism.

19  Moreover, although AB 715's operative provisions do not actually touch on discussion of

20  the Israel-Palestine conflict, it is worth noting that a school may also disassociate itself from

21  speech that would "associate the school with any position other than neutrality on matters of

22  political controversy." *Hazelwood*, 484 U.S. at 272. By requiring that materials and instruction

23  "be consistent with accepted standards of professional responsibility" and remain uninfluenced by

24  "advocacy, personal opinion, bias, or partisanship," AB 715's amendments to sections 51500(b)

25  and 51501(b) stay within the bounds set by existing caselaw. *See* AB 715 §§ 7, 8. Rather than

26  infringing on students' right "to receive an education free from political bias," as Plaintiffs allege,

27  Mot. at 24, these provisions actually ensure it.

28  Finally, Plaintiffs argue that "there is no legitimate state interest in perpetuating one-sided

22

narratives and silencing debate." Mot. at 24. However, this is not what AB 715 does. Again, none of the challenged provisions mention Israel or Palestine; they simply serve the State's legitimate interest in ensuring that students learn in an environment free from discrimination and receive factually accurate instruction.

### 3.    The Challenged Provisions Are Not Overbroad

Plaintiffs' overbreadth argument likewise fails because AB 715 is tailored to serve the government's substantial interest in ensuring students are not subject to discrimination.

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Cal. Tchrs. Ass'n*, 271 F.3d at 1155 (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). As a result, a law can only "be invalidated under the First Amendment overbreadth doctrine if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Arce*, 793 F.3d at 984 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

"The first step in an overbreadth analysis is to construe the statute, as 'it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.'" *Id.* AB 715 seeks to prevent an "antisemitic school environment," meaning "a school environment that subjects pupils or employees who are, or are perceived to be, Jewish or Israeli to harassment, discrimination, or violence based on their religion, nationality, race, or ethnicity." AB 715 § 1(h). It does so by adding provisions to the Education Code, which are not specific to antisemitism but rather enhance existing prohibitions on school materials that are discriminatory, factually inaccurate, or biased. *See id.* §§ 2, 7, 8 (amending Cal. Educ. Code §§ 244, 51500, 51501). It also creates the position of Antisemitism Prevention Coordinator within the new Office of Civil Rights. *See id.* § 5 (creating Cal. Educ. Code §§ 33801, 33803.1). The only portion of AB 715 codified into law that references the National Strategy provides that it "shall be a basis to inform the Antisemitism Prevention Coordinator on how to identify, respond to, prevent, and counter antisemitism." *Id.* (creating Cal. Educ. Code § 33803.1(c)). Plaintiffs' motion and complaint, however, appear to challenge the preexisting provisions that prohibit discriminatory, inaccurate, and biased materials, as well as the new sections reinforcing them. They do not take issue with

23

1  the creation or duties of the Antisemitism Prevention Coordinator.

2         The plainly legitimate sweep of the challenged provisions overwhelms any possible

3  unconstitutional applications. There are a vast number of situations to which prohibitions on

4  discriminatory instructional materials apply, including materials that would discriminate on the

5  "basis of race or ethnicity, gender, religion, disability, nationality, or sexual orientation," *see, e.g.*,

6  Cal. Educ. Code § 51501(a), as well as materials that are antisemitic, Islamophobic, or anti-

7  Palestinian. Far from invading the rights of Student Plaintiffs, these provisions protect them.

8         Moreover, as already discussed, the terms "discrimination" and "discriminatory" as used

9  in AB 715's amendments to section 244 and 51500 are well-understood, commonsense terms. *See*

10  *Good News Emp. Ass'n*, 223 F. App'x at 736 (policy prohibiting "discrimination and/or

11  harassment based on sexual orientation" was not overbroad); *Reges v. Cauce*, 733 F. Supp. 3d

12  1025, 1041–43 (W.D. Wash. 2024) (upholding a university regulation "promoting an

13  environment that is free of discrimination, harassment, and retaliation," reasoning that the terms

14  were not overbroad because they were well-defined).

15         Further, language similar to AB 715's prohibition on materials that "promote[] a

16  discriminatory bias" has withstood overbreadth challenges. In *Arce*, for example, the Ninth

17  Circuit considered a law that "prohibit[ed] any courses or classes that '[p]romote resentment

18  toward a race or class of people.'" 793 F.3d at 985. There too, plaintiffs were "concerned that a

19  discussion in an English class of Mark Twain's *The Adventures of Huckleberry Finn* or Richard

20  Wright's *Black Boy* might inadvertently bring about feelings of resentment in some students and

21  prompt a finding of violation." *Id*. The Ninth Circuit, however, held that it could not "conclude

22  that a substantial number of its applications would not be reasonably related to the state's

23  legitimate pedagogical interest in reducing racism" and so the provision was not overbroad. *Id.*;

24  *see also id.* at 986 (prohibition on "courses and classes that '[a]dvocate ethnic solidarity instead

25  of the treatment of pupils as individuals'" was not overbroad); *Wisconsin v. Mitchell*, 508 U.S.

26  476, 488 (1993) (law prohibiting bias motivated crimes was not overbroad). And in *McCarthy v.*

27  *Fletcher*, the Court of Appeal considered language identical to that in section 51501, concluding

28  that it was neither overbroad nor vague. *See* 207 Cal. App. 3d 130, 147, 149 (1989).

Plaintiffs argue that AB 715 "*heavily insinuates* that criticism of the State of Israel and the political philosophy of Zionism are encompassed within its prohibitions." Mot. at 20 (emphasis added). But nowhere does the law actually say that, and, as they point out, at least one court has already held that speech that is critical of Israel is not antisemitic or discriminatory. *See* Mot. at 20–21 (citing *Stand With US*, 158 F.4th at 16).

None of AB 715's amendments to the Education Code's civil rights protections hinge on the definition of antisemitism, and so Plaintiffs' concern that AB 715 fails to define antisemitism—which, as discussed above, is simply not correct—is misplaced. Again, the operative provisions, on their face, in no way conflate criticism of Israel with antisemitism.

The requirement that instructional materials be "factually accurate" and "consistent with accepted standards of professional responsibility, rather than advocacy, personal opinion, bias, or partisanship" also has a "plainly legitimate sweep" that overwhelms any arguable unconstitutional applications. *See* AB 715 §§ 7, 8 (amending Cal. Educ. Code §§ 51500(b), 51501(b)). There are innumerable ways in which factually inaccurate or biased materials can harm students, including by interfering with their ability "to receive an education free from political bias." *See* Mot. at 24.

Both AB 715 and the Education Code's preexisting provisions are tailored to address well-founded concerns about antisemitism and other forms of discrimination in public schools through prohibitions on discriminatory instruction and sensible requirements that materials be factually accurate and free from bias. Their plainly legitimate sweep is broad and any incidental impact on a students' right to receive information and ideas is insubstantial in comparison.

## CONCLUSION

Plaintiffs' claims are not justiciable and fail on the merits. For these reasons, the Motion should be denied.

1    Dated: December 1, 2025                      Respectfully submitted,

2                                                 ROB BONTA
                                                  Attorney General of California
3                                                 DARRELL W. SPENCE
4                                                 Supervising Deputy Attorney General

5                                                 /s/ Andrew Z. Edelstein
                                                  ANDREW Z. EDELSTEIN
6                                                 Deputy Attorney General
7                                                 *Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (5:25-cv-09443-NW)

# CERTIFICATE OF SERVICE

Case Name:  __Prichett, et al. v. Newsom, et al.__    No.   __5:25-cv-09443-VKD__

I hereby certify that on <u>December 1, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>December 1, 2025</u>, at Sacramento, California.

| Christopher R. Irby | *S/ Christopher R. Irby* |
|:---:|:---:|
| Declarant | Signature |

SF2025306301
39447095.docx