1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREA PRICHETT, et al.,              Case No. 25-cv-09443-NW

8              Plaintiffs,

9         v.                              **ORDER DENYING PLAINTIFFS'**
                                          **MOTION FOR A PRELIMINARY**
10   ROB BONTA, et al.,                    **INJUNCTION**

11             Defendants.                 Re: ECF No. 15

12

13        Plaintiffs are teachers and students who seek to enjoin the enforcement of California

14   Assembly Bill 715 ("AB 715"), titled "Educational equity: discrimination: antisemitism

15   prevention."  AB 715 amends and adds sections to California's existing Education Code.  In their

16   complaint and motion for preliminary injunction, Plaintiffs assert that under the AB 715

17   amendments teachers will need to choose between censoring themselves, risking discipline, or not

18   teaching their students factually accurate information about "subjects related to Palestine, Israel,

19   and the Middle East."  The corollary, as alleged by Plaintiffs, is that students will either not learn

20   about these pertinent issues, or that the fear of discipline for themselves or their teachers will

21   prevent students from engaging in critical thinking and free expression regarding events in the

22   Middle East.

23        Plaintiffs' motion alleges that AB 715 is facially unconstitutional under the First and

24   Fourteenth Amendments of the United States Constitution.  For the reasons set forth below, the

25   Court DENIES Plaintiffs' motion.[1]

26

27   _____

     [1] At the outset of the December 17, 2025, hearing on the instant motion, the Court granted
28   Plaintiffs' motion to submit supplemental evidence.  ECF No. 40; *see also* Tr. at 6:10-12, ECF No.
     67.

## I.     BACKGROUND

On October 7, 2025, two years to the day after Hamas attacked Israel killing more than 1,200 people, California Governor Newsom signed AB 715 into law.  AB 715, which becomes effective on January 1, 2026, reflects the legislature's attempts to address an increase in antisemitic incidents in California's public schools.  As set forth in the bill's precatory language, "Jewish and Israeli American pupils across California are facing a widespread surge in antisemitic discrimination, harassment, and bullying." AB 715 § 1(c).  The bill specifically declares that the "United States National Strategy to Counter Antisemitism, published by the Biden Administration on May 25, 2023, shall be a basis to inform schools on how to identify, respond to, prevent, and counter antisemitism."  *Id.* § 1(i).

Though the bill's language is forceful, *see* AB 715 § 1(k) ("Antisemitism is dangerous, antithetical to California values, and must not be tolerated in any California classroom"), the enactments and amendments to the Education Code are substantively modest.  Much of the bill concerns the creation and administration of the Office of Civil Rights ("OCR") within the state's Government Operations Agency, including the requirement that the new OCR employ an Antisemitism Prevention Coordinator.[2]  *See id.* § 5.  Of the remaining sections of the bill, the majority amend and strengthen California's current antidiscrimination laws and antidiscrimination complaint procedures.  *See id.* §§ 2, 3, 6-9.

Notably, the current Education Code already provides that a "teacher shall not give instruction and a school district shall not sponsor any activity that promotes a discriminatory bias on the basis of race or ethnicity, gender, religion, disability, nationality, or sexual orientation . . . ." Cal. Educ. Code § 51500(a)(1).  AB 715 adds additional language to § 51500, for example

---

[2] Senate Bill 48, a companion bill that was passed concurrently in the California Senate, and is "contingent upon the enactment of AB 715," requires the OCR to employ prevention coordinators for other groups including "a Religious Discrimination Prevention Coordinator, a Race and Ethnicity Discrimination Prevention Coordinator, a Gender Discrimination Prevention Coordinator, and an LGBTQ Discrimination Prevention Coordinator."  Like the Antisemitism Coordinator referenced in AB 715, Senate Bill 48 requires each of these additional coordinators "to be appointed by the Governor and confirmed by the Senate."  *See* Senate Bill 48.

1  requiring that "[t]eacher instruction shall be factually accurate."  AB 715 § 7 (creating Cal. Educ.

2  Code § 51500(b)).

3      As with the precatory language, the enacting provisions of AB 715 do not explicitly define

4  antisemitism, an omission that Plaintiffs insist renders the entire bill unconstitutionally vague.  *See*

5  Compl., ECF No. 1 ¶¶ 4, 8, 40, 272, 294; PI Mot., ECF No. 15 at 1, 2, 5, 9, 14, 20; Reply, ECF

6  No. 43 at 1, 13.  The bill does, however, state that "[t]he United States National Strategy to

7  Counter Antisemitism, published by the Biden Administration on May 25, 2023 ["Biden National

8  Strategy"] shall be a basis to inform" the newly appointed Antisemitism Prevention Coordinator

9  "on how to identify, respond to, prevent, and counter antisemitism."  AB 715 § 5 (creating Cal.

10  Educ. Code § 33803.1(c)).  Plaintiffs correctly note that the Biden National Strategy also does not

11  define antisemitism, though it explains that "the United States has embraced" the "non-legally

12  binding 'working definition' of antisemitism adopted in 2016 by the 31-member states of the

13  International Holocaust Remembrance Alliance (IHRA)."  Biden National Strategy at 13.  The

14  IHRA's "working definition" in turn states that "[a]ntisemitism is a certain perception of Jews,

15  which may be expressed as hatred toward Jews.  Rhetorical and physical manifestations of

16  antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward

17  Jewish community institutions and religious facilities."[3]  Working Definition of Antisemitism,

18  INT'L HOLOCAUST REMEMBRANCE ALL., https://holocaustremembrance.com/resources/working-

19  definition-antisemitism.[4]

20

21

22

23

---

24  [3] Among eleven examples of antisemitism provided under IHRA's definition is the following:
    "Denying the Jewish people their right to self-determination, *e.g.*, by claiming that the existence of

25  a State of Israel is a racist endeavor."  *Id.*

26  [4] Two other district courts outside of California have considered First and/or Fourteenth
    Amendment challenges to similar government enactments that cite the IHRA definition.  *See*

27  *Students for Just. in Palestine, at Univ. of Houston v. Abbott*, 756 F. Supp. 3d 410 (W.D. Tex.
    2024); *McClanahan v. Trump*, No. 3:25-CV-05025-MDH, 2025 WL 2807018, at *1 (W.D. Mo.

28  Sept. 30, 2025).

Plaintiffs are teachers ("Teacher Plaintiffs") and students[5] ("Student Plaintiffs") in California public schools.[6]  Teacher Plaintiffs have taught about Palestine, Israel, and the Middle East in their classrooms.  They have sought to provide balanced and factually accurate information about the current conflict in the area, including the deaths of approximately 70,000 Palestinians in Gaza since October 7, 2023.  Teacher Plaintiffs have expressed a desire to continue teaching about Israel, Palestine, and the Middle East if doing so is not prohibited under AB 715.  Some Teacher Plaintiffs have already been the subject of (later discredited) antidiscrimination complaints related to comments about Palestine.  Specifically, Teacher Plaintiffs worry that AB 715 exposes them "to charges of unlawful discrimination and corresponding discipline if they convey ideas, information, and instructional materials to their students that may be considered critical of the State of Israel and the philosophy of Zionism—thus, creating a chilling effect and infringing on the First Amendment rights of both the teacher and student."  PI Mot. at 2.  Student Plaintiffs allege a different variation of a First Amendment violation by claiming that AB 715 undermines their "rights to receive information" related to "Palestinian and Arab culture" because teachers will be forced to self-censor to remain within the confines of AB 715.  PI Mot. at 2, 8.

Plaintiffs filed suit against Defendants[7] on November 2, 2025, alleging three causes of action.  *See generally* Compl.  Teacher Plaintiffs allege that (1) AB 715 violates their due process rights by being void-for-vagueness (Count I), and that (2) AB 715 is both overbroad and constitutes viewpoint discrimination, in violation of their First Amendment right to free speech

---

[5] Because the student Plaintiffs are minors, their parents bring suit on their behalf.

[6] Plaintiffs' complaint includes the organization LA Educators for Justice in Palestine, which represents "around 100 teachers, academic counselors, school psychologists, and other individuals."  Compl. ¶¶ 108-09.  Though there are about a dozen paragraphs in the complaint dedicated to the organization, *see id.* ¶¶ 108-116, 156, 159, 165, 167, 280, 283, Plaintiffs' motion hardly mentions the group.  For purposes of this Order, the Court assumes without deciding that the analysis set forth below for the Teacher Plaintiffs applies identically to LA Educators for Justice in Palestine.

[7] Defendants are Gavin Newsom, in his official capacity as the Governor of California; Rob Banta, in his official capacity as Attorney General of California; and Tony Thurmond, in his official capacity as the California State Superintendent of Public Instruction.

1    (Count II).  Student Plaintiffs allege a free speech violation (identical to that raised by Teacher

2    Plaintiffs), predicated on their right to receive information (Count III).

3         Less than a week after filing on November 7, 2025, Plaintiffs moved for a preliminary

4    injunction and asked the Court to enjoin the enforcement of AB 715 before it goes into effect on

5    January 1, 2026.  Plaintiffs' motion explicitly states that their claims are facial challenges to AB

6    715 under the Fourteenth and First Amendments.  *See* PI Mot. at 1 ("AB 715 is facially

7    unconstitutional under the Fourteenth Amendment Due Process Clause because it is

8    unconstitutionally vague and under the First Amendment because it is overbroad and imposes

9    unreasonable viewpoint-based restrictions on Teacher Plaintiffs' speech and Student Plaintiffs'

10   rights to speak and receive information.").  Three non-parties filed *amicus* briefs in opposition to

11   Plaintiffs' motion, ECF Nos. 34, 37, and 38, and four *amici* filed briefs in support, ECF Nos. 47,

12   50, 54, and 51.  The Court heard oral argument on Plaintiffs' motion on December 17, 2025.

## II.    LEGAL STANDARD

### A.    Preliminary Injunction

15        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

16   *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain a preliminary injunction, a

17   movant must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer

18   irreparable harm absent an injunction, (3) the balance of equities tips in their favor, and (4) an

19   injunction is in the public interest.  *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1115 (9th Cir. 2024)

20   ("*NetChoice I*") (citing *Winter*, 555 U.S. at 20).  "Because 'the party opposing injunctive relief is a

21   government entity' here, the third and fourth factors 'merge.'"  *X Corp. v. Bonta*, 116 F.4th 888,

22   897 (9th Cir. 2024) (quoting *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of*

23   *Educ.*, 82 F.4th 664, 695 (9th Cir. 2023)).

### B.    Standing and Ripeness

25        Under the "case or controversy" requirement of Article III to the United States

26   Constitution, a federal court has subject matter jurisdiction over a claim only if the plaintiff has

27   standing to bring the claim, and the claim is ripe for adjudication.  *Chandler v. State Farm Mutual*

28   *Automobile Ins. Co.,* 598 F.3d 1115, 1121 (9th Cir. 2010).  "While standing is primarily concerned

United States District Court
Northern District of California

5

1    with who is a proper party to litigate a particular matter, ripeness addresses when that litigation

2    may occur." *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997).

3             To demonstrate standing, a plaintiff must show three things: (1) injury-in-fact, (2)

4    causation, and (3) redressability. *Allen v. Wright,* 468 U.S. 737, 750 (1984). In the context of a

5    pre-enforcement challenge, the injury-in-fact "is the anticipated enforcement of the challenged

6    statute in the future." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). A plaintiff

7    sufficiently alleges a pre-enforcement injury where she demonstrates "an intention to engage in a

8    course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and

9    there exists a credible threat of prosecution thereunder." *Susan B. Anthony v. Driehaus,* 573 U.S.

10   149, 159 (2014). The Ninth Circuit translated *Driehaus*'s directive into a three-factor inquiry: (1)

11   whether the plaintiffs have a "concrete plan" to violate the law; (2) whether the enforcement

12   authorities have communicated a specific warning or threat to initiate proceedings; and (3)

13   whether there is a history of past prosecution or enforcement. *See Thomas v. Anchorage Equal*

14   *Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc); *Tingley v. Ferguson,* 47 F.4th

15   1055, 1067 (9th Cir. 2022) (applying the factors set forth in *Thomas*). In *Peace Ranch* the Ninth

16   Circuit clarified the first factor, stating "a plaintiff need not plan to break the law. The concept of

17   'intention' is more counterfactual than practical. That is to say, courts must ask whether the

18   plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed." 93

19   F.4th at 488. The Ninth Circuit has further explained that neither the mere existence of a

20   proscriptive statute nor a generalized threat of prosecution satisfies the factors in *Thomas*.

21   *Tingley*, 47 F.4th at 1067.

22            "The ripeness doctrine is peculiarly a question of timing, designed to separate matters that

23   are premature for review because the injury is speculative and may never occur from those cases

24   that are appropriate for federal court action." *Stockton v. Brown*, 152 F.4th 1124, 1142 (9th Cir.

25   2025) (cleaned up). "There are two ripeness considerations: constitutional and prudential."

26   *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024). "[T]he

27   constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing

28   inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

United States District Court
Northern District of California

1    "The prudential ripeness inquiry is 'guided by two overarching considerations: the fitness

2    of the issues for judicial decision and the hardship to the parties of withholding court

3    consideration.'" *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025), *cert. denied sub*

4    *nom.*, No. 24-1061, 2025 WL 2823711 (Oct. 6, 2025) (quoting *Bishop Paiute Tribe v. Inyo Cnty.*,

5    863 F.3d 1144, 1154 (9th Cir. 2017)).  "The fitness prong is met when 'the issues raised are

6    primarily legal, do not require further factual development, and the challenged action is final.'"

7    *Tingley*, 47 F.4th at 1070 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)).

8    "Evaluating whether withholding judicial review presents a hardship requires looking at whether

9    the challenged law 'requires an immediate and significant change in the plaintiffs' conduct of their

10    affairs with serious penalties attached to noncompliance.'"  *Id.* at 1070–71 (quoting *Stormans*, 586

11    F.3d at 1126).

## III.    DISCUSSION

### A.    The Entirety of AB 715 is Not Unconstitutional On Its Face

14    Plaintiffs' ask the Court to find that the entirety of AB 715 is unconstitutional, stating "AB

15    715's failure to define antisemitism while creating turmoil by instructing schools to use the Biden

16    National Strategy to determine what constitutes antisemitism pervades the entire bill and renders it

17    unconstitutionally vague."  Reply at 13.  At the hearing on this motion, however, Plaintiffs

18    conceded that they were not arguing that every aspect of AB 715 was unconstitutional.  *See* Tr. at

19    19:19-23 (The Court: "The law creates a civil rights office . . . You are not arguing that it's illegal

20    to do that." / Plaintiffs: "Not now, no.").

21    "Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to

22    limit the solution to the problem, severing any problematic portions while leaving the remainder

23    intact" because an unconstitutional provision in a statute "does not necessarily defeat or affect the

24    validity of its remaining provisions."  *Free Enterprise Fund v. Public Company Accounting*

25    *Oversight Bd*. 561 U.S. 477, 508 (2010); *see also People v. Mosqueda*, 97 Cal.App.5th 399, 414

26    (2023).  Courts take this approach because "[a] ruling of unconstitutionality frustrates the intent of

27    the elected representatives of the people. Therefore, a court should refrain from invalidating more

28    of the statute than is necessary."  *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984).

United States District Court
Northern District of California

1    Because here the "constitutionality of a state [enactment] is challenged, principles of state

2    law guide the severability analysis and [courts] should strike down only those provisions which

3    are inseparable from the invalid provisions."  *Costco Wholesale Corp. v. Maleng,* 522 F.3d 874,

4    886 (9th Cir. 2008) (citing *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 556–57 (9th Cir.

5    2004)).  Under California law, the Court can only sever provisions if (1) they are "grammatically,

6    functionally, and volitionally separable," (2) the "invalid parts can be removed as a whole without

7    affecting the wording or coherence of what remains," and (3) if the "remainder [of the statute] is

8    complete in itself."  *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 576 (9th Cir. 2014).

9    The Court is not persuaded by Plaintiffs' argument that the uncertainty created by AB

10    715's inexact definition of antisemitism casts an unconstitutional pall over the entire bill.  In fact,

11    the term antisemitism does not even appear in AB 715 §§ 2, 3, 6-8, 10-13.  Further, in addition to

12    Plaintiffs' concession that the creation of an OCR is not unconstitutional (addressed in § 5), during

13    oral argument Plaintiffs struggled to articulate *any* provision of AB 715 that was unconstitutional,

14    other than the reference to the Biden National Strategy contained in the precatory declarations of

15    the legislature in § 1(i), and in the new § 33803.1(c).  *See* AB 715 § 4; Tr. at 19:19-23 *see also* Tr.

16    at 21:11-23:12 (failing to identify any specific provision of AB 715 as unconstitutional beyond

17    those that cite the Biden National Strategy and arguing that the entire bill is unconstitutional

18    simply because "the Biden National Strategy underlies it.").

19    Plaintiffs failed to demonstrate that the California legislature's references in AB 715 to the

20    Biden National Strategy ("as a basis" that shall "inform schools on how to identify, respond to,

21    prevent, and counter antisemitism") were unconstitutional.  However, even if Plaintiffs had proved

22    that those two references were unconstitutional, the Court could, and would, properly sever those

23    two references from the remainder of AB 715 because: (1) the sections are grammatically,

24    functionally, and volitionally separable as they create entirely new code, or deal exclusively with

25    the administration of the bill itself; (2) severing the references to the Biden National Strategy

26    would have no bearing on the coherence of the remainder of AB 715; and (3) without the severed

27    provisions, the remainder of AB 715 is complete as a stand-alone bill.

28

United States District Court
Northern District of California

1
2

**B.      Teacher Plaintiffs Have Standing to Bring Suit Under the First and Fourteenth Amendments**

3
4

Teacher Plaintiffs have made sufficient allegations to overcome the standing hurdle to bring their pre-enforcement constitutional claims.

5
6
7
8
9
10
11
12
13
14
15

"First Amendment cases raise 'unique standing considerations,' that 'tilt[ ] dramatically toward a finding of standing.'" *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (cleaned up).  That is because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Planned Parenthood v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) (quoting *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).  In their complaint, Teacher Plaintiffs have alleged an injury-in-fact by claiming future self-censorship.  *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements and recognized 'self-censorship' as a harm that can be realized even without an actual prosecution." (citations and internal quotation marks omitted)).

16
17
18
19
20
21
22
23
24

Teacher Plaintiffs have also sufficiently alleged an injury that suffices for a pre-enforcement claim under *Driehaus*.  First, Teacher Plaintiffs explicitly allege that "they are refraining from engaging in speech they otherwise would engage [in] due to the enactment of AB 715."  Reply at 3.  Second, though California has not communicated a specific intent to prosecute offenders under AB 715, "the government's failure to *disavow* enforcement of the law . . . weigh[s] in favor of standing."  *Tingley v. Ferguson*, 47 F.4th 1055, 1068 (9th Cir. 2022) (emphasis in original).  The third *Driehaus* factor carries "little weight" where, as here, "the challenged law is relatively new and the record contains little information as to enforcement." *Tingley*, 47 F.4th at 1069.

25
26
27

That Teacher Plaintiffs may not have a First Amendment right is irrelevant when assessing standing.  The Court in *Tingley* explained that a plaintiff's "standing to bring First Amendment claims . . . 'in no way depends on the merits' of those claims."  *Id.*

28

9

1    Finally, because Teacher Plaintiffs have standing to bring their First Amendment claim,

2    they too have standing to bring their Fourteenth Amendment Claim.  The "relaxed standard for

3    asserting a justiciable injury in fact also applies to due process challenges implicating First

4    Amendment interests."  *Kumar v. Koester*, 683 F. Supp. 3d 1108, 1114 (C.D. Cal. 2023), *aff'd and*

5    *remanded,* 131 F.4th 746 (9th Cir. 2025) (citing *Arce v. Douglas*, 793 F.3d 968, 987–88 (9th Cir.

6    2015)).

7        **C.    Teacher Plaintiffs' Claims Are Not Prudentially Ripe**

8        While Teacher Plaintiffs' claims pass the standing hurdle, those claims are not currently

9    ripe for adjudication.  As set forth above, prudential ripeness is "guided by two considerations:

10    'the fitness of the issues for judicial decision and the hardship to the parties of withholding court

11    consideration.'"  *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (quoting *Thomas*, 220

12    F.3d at 1141).

13        The facts currently before the Court demonstrate that crucial aspects of AB 715 are still in

14    motion and not fit for review.  For example, § 5 requires the yet-to-be-created OCR (which will

15    presumably be run by a yet-to-be appointed Director) to employ a yet-to-be-appointed

16    Antisemitism Prevention Coordinator, who will consider the Biden National Strategy as "a basis"

17    among potential others to inform "how to identify, respond to, prevent, and counter antisemitism."

18    Judicial review of AB 715 is premature given the countless factual uncertainties, substantive and

19    temporal, that may unfold in the future.

20        The second factor – hardship on the parties of withholding court consideration – also

21    favors a finding that Teacher Plaintiffs' claims are untimely.  Plaintiffs are already subject to

22    complaints and disciplinary actions grounded in potentially false allegations of antisemitism, the

23    very type of complaints they insist AB 715 will allow.  *See* Cal. Educ. Code § 244 (setting forth

24    the mechanism for individuals to file discrimination complaints against schoolteachers and

25    administrators).  AB 715 is not yet in effect.  Still, Teacher Plaintiffs describe a litany of

26    complaints and disciplinary actions they have faced in recent years, each of which occurred under

27    the *current California Education Code* — existing law that Teacher Plaintiffs do not challenge.

28    *See generally* Compl. ¶¶ 53-107 (detailing various complaints lodged against Teacher Plaintiffs as

United States District Court
Northern District of California

10

a result of their activism before AB 715 was enacted). With the enactment of AB 715, the yet-to-be-appointed Antisemitism Prevention Coordinator will eventually be involved in how local schools "handl[e]" antisemitism. AB 715 § 5 (enacting Cal. Educ. Code § 33803.1(b)(4)). While that may include the administration of antisemitic discrimination complaints, it does not follow that the complaints will be judged more harshly than current complaints. Plaintiffs have not shown that the mere existence of AB 715, even with its forceful precatory language about antisemitism,[8] means public school administrators will be more likely than they are now (under the current Education Code) to find to find that antisemitism complaints are meritorious.

"Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule." *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) (collecting cases). Where the Court is consigned to "hypothesiz[ing] about how the law might be applied," deferring on the adjudication of the claim is proper. *Id.*

Teacher Plaintiffs have failed to provide a record that supports California will unlawfully enforce an unconstitutional definition of antisemitism under AB 715. As Teacher Plaintiffs' claims are not ripe for review, the Court is without the requisite jurisdiction to grant injunctive relief on their claims.

**D.    Even if Teacher Plaintiffs' Claims Were Ripe, They Are Unlikely to Succeed on the Merits**

Because "considerations of prudential ripeness are discretionary," the Court has also conducted an analysis of the merits of Teacher Plaintiffs' claims. *Stockton v. Brown*, 152 F.4th 1124, 1149 n.13 (9th Cir. 2025). The Court finds that all claims alleged suffer from fatal deficiencies, and Teacher Plaintiffs are therefore unlikely to succeed on the merits.

---

[8] Plaintiffs argued at the hearing that AB 715's precatory language "carries the enforcement of law." Tr. at 21:2-8.); *see also* Reply at 4. Plaintiffs are incorrect. Uncodified legislative findings may serve as an interpretive tool when a statutory provision is ambiguous, *Young v. Superior Court*, 79 Cal.App.5th 138, 156–157 (2022), but such findings "do not confer power, determine rights, or enlarge the scope of [the] measure," *People v. Flores*, 44 Cal.App.5th 985, 995 (2020); *see also Cnty. of Los Angeles v. Superior Ct.*, 209 Cal. App. 4th 543, 550 (2012) ("An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion.").

United States District Court
Northern District of California

1    **1.    Teacher Plaintiffs do not have First Amendment rights while teaching,**

2    **so they cannot bring a claim alleging the infringement of those rights.**

3    Neither teachers nor students "shed their constitutional rights to freedom of speech or

4    expression at the schoolhouse gate." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022)

5    (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).  The Supreme

6    Court has reiterated this maxim many times since it decided *Tinker*.  Yet, the Court has never

7    suggested that "the speech rights of public school employees are so boundless that they may

8    deliver any message to anyone anytime they wish." *Kennedy*, 597 U.S. at 527.  After all, "[i]n

9    addition to being private citizens, teachers and coaches are also government employees paid in

10    part to speak on the government's behalf and convey its intended messages." *Id.*  "[T]he

11    government's interest in achieving its goals as effectively and efficiently as possible is elevated

12    from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as

13    employer." *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 676 (1996)

14    (quoting *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality opinion)).  The power to impose

15    such restrictions, however, is not unbridled, especially when government employees speak on

16    matters of public interest. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 720 (9th Cir.

17    2022).

18    Recognizing the tension inherent in balancing the competing interests, the Supreme Court

19    developed the *Pickering-Garcetti* framework. *See Pickering v. Bd. of Ed. of Township High Sch.*

20    *Dist. 205, Will Cty.*, 391 U.S. 563 (1968); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  The

21    framework "requires a fact-sensitive and deferential weighing of the government's legitimate

22    interests" as employer against the First Amendment rights of the employee. *Kennedy*, 597 U.S. at

23    527.  The Ninth Circuit distilled the *Pickering-Garcetti* framework into a five-part inquiry:

24        (1) whether the plaintiff spoke on a matter of public concern; (2)
          whether the plaintiff spoke as a private citizen or public employee;
25        (3) whether the plaintiff's protected speech was a substantial or
          motivating factor in the adverse employment action; (4) whether the
26        state had an adequate justification for treating the employee
          differently from other members of the general public; and (5) whether
27        the state would have taken the adverse employment action even
          absent the protected speech.
28

United States District Court
Northern District of California

1   *Jensen v. Brown*, 131 F.4th 677, 686 (9th Cir. 2025) (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070

2   (9th Cir. 2009)).  In the typical retaliation case, a plaintiff must allege all five elements to state a

3   claim.  Because this is a pre-enforcement action, Teacher Plaintiffs need only allege the first two

4   elements—that, but for AB 715, (1) they would be speaking on a matter of public concern and (2)

5   they would do so as private citizens.

6          The Ninth Circuit used the *Pickering-Garcetti* framework when deciding *Johnson v.*

7   *Poway Unified School District*, a case Defendants insist controls the instant case's outcome.  658

8   F.3d 954, 961 (9th Cir. 2011).  In *Johnson*, a math teacher sued school officials when he was

9   required to remove from his classroom large banners that expressed his religious views.  *Id.* at

10  958-60.  The Court found that Johnson's speech was not protected because his speech "owe[d] its

11  existence to his position as a teacher."  *Id.* at 966.  The Court explained "Johnson did not act as a

12  [private] citizen when he went to school and taught class, took attendance, supervised students, or

13  regulated their comings-and-goings; he acted as a teacher—a government employee."  *Id.*

14  Accordingly, his employer could regulate his speech.  *Id.*[9]

15         Here, Teacher Plaintiffs have expressed a desire to discuss Israel and Palestine in their

16  classrooms as part of their lessons, topics that at least facially are not prohibited under AB 715.

17  Neither party provided the Court with any evidence explaining what curriculum, if any, California

18  or its respective school districts have developed regarding Israel and Palestine, including Hamas'

19  October 7, 2023 attack on Israel, and the ongoing conflict in Gaza that has killed tens of thousands

20  of people.  But assuming Teacher Plaintiffs' lessons on Israel and Palestine are subsumed within

21  relevant curricula, it is no different than lessons presented under any government regulated

22  curricula: when a teacher stands before a classroom imparting those lessons, that teacher speaks

23  with the voice of the government.  *See Nampa Classical Acad. v. Goesling*, 447 F. App'x 776, 778

24  (9th Cir. 2011) ("[T]he curriculum presented [in public schools] . . . is not the speech of teachers,

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [9] At oral argument, Plaintiffs requested that the Court apply the test set forth in *Hazelwood Sch.*
    *Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), but *Johnson* explicitly rejected that approach, holding
    that the *Pickering-Garcetti* test "control[s] in cases of in-school teacher speech."  *Johnson*, 658

28  F.3d at 962; *see also id.* (noting that *Hazelwood* involved student journalists rather than
    government employees).

13

parents, or students, but that of the [state] government."); *Kennedy*, 597 U.S. at 527 (acknowledging that teachers are "paid in part to speak on the government's behalf and convey its intended messages.").

        As public-school education belongs to the government, the government may regulate Teacher Plaintiffs' speech to accord with the government's educational goals. It is of no significance that the curricula and the attendant speech required to teach it may advance a single viewpoint to the exclusion of another.[10]  *See Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) ("The First Amendment's Free Speech Clause does not prevent the government from declining to express a view."); *see also id.* at 268 (Alito, J. concurring) ("Governments are not natural persons and can only communicate through human agents who have been given the power to speak for the government.").  As a result, Defendants are correct: *Johnson* forecloses Teacher Plaintiffs' First Amendment claim.  Teacher Plaintiffs cannot assert the violation of a constitutional right to which they have no "legitimate claim of entitlement."  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Garcetti*, 547 U.S. at 418 ("[T]he possibility of a First Amendment claim arises" only if "the employee [speaks] as a citizen on a matter of public concern.").

        Instead of attempting to distinguish *Johnson,* Plaintiffs claim that subsequent "Supreme Court jurisprudence establishes that *Johnson* was wrongly decided . . . because it misconstrued the government speech doctrine."  Reply at 13.  Plaintiffs cite to *Shurtleff*, 596 U.S at 252 and *Matal v. Tam*, 582 U.S. 218, 235 (2017) for that proposition, though neither case involved a public school teacher, or even a public employee.  In *Shurtleff*, the Supreme Court found that the city of Boston violated the First Amendment when it refused to fly a private citizen's religious flag in

---

[10]  It is squarely in the purview of the government to decide whether and at what grade-level it is appropriate to teach certain content to students; and if the content is taught, whether the viewpoints of various organizations or individuals are presented as facts, opinions, or not at all. Several paragraphs in Plaintiffs' complaint shed light on this point.  For example, in paragraph 146 of the complaint, Plaintiffs state, "The international consensus is that Israel is illegally occupying Palestine . . . ."  Plaintiffs dig deeper into politically controversial content in paragraph 147 stating, "[M]ost international human rights organizations have concluded that Israel is committing genocide in Gaza, but [] some pro-Israel Jewish individuals find that offensive and antisemitic . . . ."  These are intensely charged issues that may cause fractures among teachers, students, and parents.  It is therefore appropriate that the Government thoughtfully chooses how best, if at all, to address these topics within the pedagogy of our public-schools.

front of City Hall despite a longstanding policy that allowed local citizens to hoist any flags; *Tam*
held that the disparagement clause of the Lanham Act was facially invalid because, in allowing the
Trademark Office to reject an individual's trademark application because it was offensive, the
government was engaging in viewpoint discrimination. *Shurtleff*, 596 U.S at 252. In both cases,
the Court found that the violative speech (flag and trademark respectively) was not government-
speech and was instead the protected speech of private citizens. *Tam*, 582 U.S. at 235. These
private citizens had no relationship to the government: the government did not employ them, and
they were not attempting to speak on the government's behalf. Those circumstances are entirely
distinct from the situation here, where Teacher Plaintiffs serve in public schools teaching
governmentally regulated curricula.

What's more, Plaintiffs fail to identify a single court that refused to apply *Johnson* because
it contravened subsequent Supreme Court or even Ninth Circuit jurisprudence. The Ninth Circuit
cited *Johnson* directly three times in 2025 and did not once indicate that any portion of *Johnson*
was no longer good law. *See Adams v. Cnty. of Sacramento*, 143 F.4th 1027 (9th Cir. 2025);
*Burch v. City of Chubbuck*, 146 F.4th 822 (9th Cir. 2025); *Reges v. Cauce*, No. 24-3518, 2025 WL
3685613 (9th Cir. Dec. 19, 2025). In 2022, the Ninth Circuit issued *Dodge v. Evergreen Sch. Dist.
#114*, 56 F.4th 767, 776 (9th Cir. 2022), a case involving a public-school teacher's decision to
wear a MAGA hat to employee training, which cited *Johnson* liberally, particularly when
analyzing whether plaintiff's speech was public or private. Notwithstanding Plaintiffs' opinion
that *Johnson* was incorrectly decided, this Court is bound to follow its holdings.

Nor do any of Plaintiffs' cited cases require a different outcome. *California Teachers
Association v. State Board of Education*, which Plaintiff cited repeatedly at oral argument, does
not control. 271 F.3d 1141 (9th Cir. 2001).[11] When that decision was issued in 2001, the court
stated, "[n]either this court nor the Supreme Court has definitively resolved whether and to what
extent a teacher's instructional speech is protected by the First Amendment." *Id.* at 1148 (9th Cir.
2001). In the intervening twenty-five years, however, both courts have had occasion to consider a

---

[11] *See* Tr. at 47:23-25 (Plaintiffs: "To clear up confusion, I do think your best case on teacher's
rights in the Ninth Circuit is *California Teachers Association*.")

teacher's instructional speech in the context of the First Amendment, as demonstrated in the cases cited by the Court above. *Kennedy*, the Supreme Court's most recent interaction with the *Pickering-Garcetti* test, did not prevaricate on the issue: where "a public employee speaks 'pursuant to [his or her] official duties,' . . . that kind of speech is—for constitutional purposes at least—the government's own speech." *Kennedy,* 597 U.S. at 527 (quoting *Garcetti*, 547 U.S. at 421).

Plaintiffs' reliance on *Reges v. Cauce* is similarly misplaced. No. 24-3518, 2025 WL 3685613 (9th Cir. Dec. 19, 2025); Notice of Supp. Authority, ECF No. 71. In finding that plaintiff was entitled to First Amendment protections there, the Court relied on "the academic speech exception to *Garcetti* . . . recognized in *Demers* [*v. Austin*, 746 F.3d 402 (9th Cir. 2014)]." *Reges*, 2025 WL 3685613, at *10. Under that carve-out, professors and instructors are entitled to First Amendment protection when the speech at issue "relate[s] to scholarship or teaching." *Id.* (citing *Jensen v. Brown*, 131 F.4th 677, 689 (9th Cir. 2025). Critically, the exception only applies to university instructors and "does not apply to primary and secondary school teachers." *Id.* at *11. The Ninth Circuit specifically explained that universities "occupy a special niche in our constitutional tradition" that ensures the speech of university faculty is not restricted "on the same basis as high school teachers." *Id.*

Because Teacher Plaintiffs have failed to demonstrate that their classroom speech is protected by the First Amendment, they have failed to allege an adequate First Amendment violation. Without a right to vindicate, success on the claim is impossible, meaning (at minimum) Teacher Plaintiffs are not likely to succeed on the merits.

### 2. Teacher Plaintiffs fail to make the required showings for a successful overbreadth claim.

"Even if a speech regulation is constitutional as applied to a plaintiff, the plaintiff may challenge the law as facially overbroad or vague based on its impact on others speech." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1013 (9th Cir. 2025) ("*NetChoice II*") (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Accordingly, even though the Court finds

United States District Court
Northern District of California

1    Teacher Plaintiffs' speech unprotected under the First Amendment, the Court still considers the
2    merits of the overbreadth challenge.

3        Typical overbreadth claims risk "premature interpretation of statutes" based on "factually
4    barebones records," and the claims threaten to "short circuit the democratic process" by preventing
5    states from enforcing a law in its constitutional applications. *Wash. State Grange v. Wash. State*
6    *Republican Party*, 552 U.S. 442, 450–51 (2008) (quotation omitted). As a result, the issues
7    inherent in the Court's prudential ripeness inquiry reflect directly on the merits of this claim.

8        As in all facial challenges, "[e]valuating a First Amendment overbreadth challenge is a
9    two-step inquiry." *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1206 (9th Cir.
10   2024). "The first step in the proper facial analysis is to assess the state laws' scope." *Moody v.*
11   *NetChoice, LLC*, 603 U.S. 707, 726 (2024). "The next order of business is to decide which of the
12   laws' applications violate the First Amendment, and to measure them against the rest." *Id.* This is
13   no small task, and the Court is without an adequate record to tackle it. In its thirteen sections, AB
14   715, among other things, amends several statutes and creates an entirely new government agency.
15   Teacher Plaintiffs have not put forth "the full range of activities" covered by the law necessary to
16   allow the Court to "measure the constitutional against the unconstitutional applications." *Id.* It is
17   [a plaintiff]'s burden to make these showings," *NetChoice II*, 152 F.4th at 1013, a burden Teacher
18   Plaintiffs have not met.

19       But even if Teacher Plaintiffs had satisfied their burden to allow the Court to move to step
20   two, the Court requires factual information to determine the law's constitutionality in each of its
21   applications. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615, 618 (2021). "If, for
22   example, a law is unconstitutional because it is insufficiently tailored, the court needs to know the
23   facts that underlie that tailoring determination—for every application." *NetChoice II*, 152 F.4th at
24   1020-21 (9th Cir. 2025). And because calculating a ratio of constitutional-to-unconstitutional
25   applications risks veering into the purely speculative, the Supreme Court has emphasized that
26   facial challengers bear heavy factual burdens. *Moody*, 603 U.S. at 726; *Virginia v. Hicks*, 539
27   U.S. 113, 122 (2003). Teacher Plaintiffs' briefing did not attempt to set forth the breadth of AB
28   715's scope or the facts necessary to consider all applications, and the Court is not required to do

1    so in their stead.   Teacher Plaintiffs consequently cannot succeed on the merits of their

2    overbreadth claim.

3              **3.        AB 715 is not vague.**

4              Teacher Plaintiffs argue that AB 715 is unconstitutionally vague because it "fails to

5    provide a person of ordinary intelligence fair notice of what is prohibited." *United States v.*

6    *Williams*, 553 U.S. 285, 304 (2008); *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Tingley*,

7    47 F.4th at 1089.  "The operative question under the fair notice theory is whether a reasonable

8    person would know what is prohibited by the law." *Tingley*, 47 F.4th at 1089.  "The terms of a

9    law cannot require 'wholly subjective judgments without statutory definitions, narrowing context,

10   or settled legal meanings.'" *Id.* (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20

11   (2010)).  A statute's vagueness exceeds constitutional limits if its "deterrent effect on legitimate

12   expression is . . . both real and substantial, and if the statute is [not] readily subject to a narrowing

13   construction by the state courts[.]"  *Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 60 (1976)

14   (quotation marks omitted).  That said, "perfect clarity and precise guidance have never been

15   required even of regulations that restrict expressive activity." *Williams*, 553 U.S. at 304 (quoting

16   *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

17             In bringing this claim, Teacher Plaintiffs make inconsistent arguments.  On one hand, they

18   insist AB 715 is vague because it fails to define antisemitism; on the other hand, Teacher Plaintiffs

19   decry the injustice of the IHRA definition to which they claim they will now be held.  *See* Compl.

20   ¶ 255 (claiming AB 715 "appears to include various forms of criticizing Israel and the political

21   philosophy of Zionism in its understanding of antisemitic discrimination by instructing districts to

22   follow the Biden National Strategy.").  The dissonance between these two arguments reveals the

23   foundation of Teacher Plaintiffs' grievance: they do not like that AB 715 references the Biden

24   National Strategy that in turn references the IHRA "working definition" of antisemitism.  To be

25   sure, the IHRA definition of antisemitism has been subject to numerous legitimate criticisms,

26   including among those in the Jewish community.  *See, e.g.*, Amicus Brief of 50 Jewish Scholars of

27   Jewish Studies, Holocaust Studies, Middle East Studies, and Antisemitism, ECF No. 47-1.

28

United States District Court
Northern District of California

18

1    Drafting and enacting laws is the exclusive purview of the legislature, and the legislature

2    drafted and enacted AB 715.  The Court's limited role is to adjudicate the claims before it and to

3    interpret the plain language of AB 715 as necessary to accomplish that task.  The Court does not

4    take a position on the merits of the definition of "antisemitism" as set forth in the IHRA, nor is it

5    necessary for the Court to do so given the claims presented by Plaintiffs.  The Court does not find

6    the word antisemitism in AB 715 to be vague.  While Teacher Plaintiffs take umbrage with the

7    reference to the Biden National Strategy in the precatory language contained in § 1 of AB 715,

8    that section also notes that, "the United States National Strategy to Counter Antisemitism affirms

9    that antisemitic discrimination may be classified as discrimination on the basis of religion,

10    national origin, ethnicity, or some combination of these factors."  A reasonable person reading AB

11    715 would sufficiently understand what the legislature meant by the word "antisemitism."

12    *Tingley*, 47 F.4th at 1089.  That is enough.

13    **E.    Student Plaintiffs Do Not Have Standing to Bring Suit**

14    With Teacher Plaintiffs' claims fully addressed, the Court turns to Student Plaintiffs'

15    single claim, namely that AB 715 interferes with Student Plaintiffs' First Amendment right to be

16    exposed to the broad spectrum of viewpoints regarding Israel and Palestine.  The Court does not

17    reach the merits of Student Plaintiffs' claims, however, because Student Plaintiffs lack standing to

18    bring suit.

19    Student Plaintiffs have not demonstrated an adequate and imminent injury.[12]  Though both

20    Teacher and Student Plaintiffs have a First Amendment claim, Student Plaintiffs' claim involves a

21    different aspect of the First Amendment, the freedom to receive information.  The Court agrees

22    that Student Plaintiffs have such a right under the First Amendment,[13] *see* Compl. ¶ 300, but that

23    right has not yet been infringed and it perhaps may never be infringed.

24    _____

25    [12] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press.").

26    [13] "The Supreme Court has long recognized that the freedom to receive ideas, and its relation to

27    the freedom of expression, is particularly relevant in the classroom setting."  *Monteiro v. Tempe Union Sch. District*, 158 F.3d 1022, 1027 n. 5 (9th Cir. 1989) (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 912-13 (1982) (plurality op.); *id.* at 1228

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Even though a relaxed standard for standing applies in First Amendment cases, some sort

2    of imminent injury must be alleged.  *See Inst. for Free Speech v. Jarrett*, No. 22-35112, 2022 WL

3    11588758, at *1 (9th Cir. Oct. 20, 2022) ("Although we apply a more relaxed standing standard in

4    the First Amendment context, the requirement is not waived—the plaintiff must still demonstrate

5    that it faces a realistic danger of sustaining a direct injury as a result of the statute's operation or

6    enforcement." (internal quotations omitted)).  Unlike the Teacher Plaintiffs who have plausibly

7    alleged self-censorship, Student Plaintiffs do not (and cannot) allege that their *own* speech has

8    been or will be chilled.  The injury alleged by Student Plaintiffs' claim is that they are entitled to

9    receive information that, with the passage of AB 715, they expect they will no longer receive.

10    This type of injury—the subjective fear of an impending future violation—is too speculative to

11    confer standing.  *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017)

12    ("Mere speculation or subjective apprehension about future harm [does not] support standing.")

13    (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (internal quotations

14    omitted)).

15    In sum, "a fear of prosecution will only inure if the plaintiff's intended speech arguably

16    falls within the statute's reach."  *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th

17    Cir. 2003).  Student Plaintiffs do not have "an actual and well-founded fear that [AB 715] will be

18    enforced against [them],' and they have accordingly not 'suffered [a] constitutionally recognized

19    injury."  *Int'l Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 849 (9th Cir. 2025)

20    (quoting *Cal. Pro-Life Council*, 328 F.3d at 1095).  Accordingly, at this stage in the litigation,

21    Student Plaintiffs have not sufficiently alleged that they sustained or will imminently sustain an

22

23

24    ("[A] student's First Amendment rights are infringed when books that have been determined by
     the school district to have legitimate educational value are removed from a mandatory reading list
25    because of threats of damages, lawsuits, or other forms of retaliation."); *see also Arce v. Douglas*,
     793 F.3d 968, 988 (9th Cir. 2015) ("[P]laintiffs have a liberty interest grounded in their First
26    Amendment right to receive information") (students stated a First Amendment violation where
     statute caused the elimination of a Mexican American Studies program.).  The limits of that right,
27    however, a murky.  *See Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1015–16 (9th
     Cir. 2000) (holding students and teachers do not have a "First Amendment right to influence
28    curriculum as they so choose.").

1    injury.  Accordingly, the Court finds Student Plaintiffs lack standing to bring suit, and therefore

2    this Court does not have the jurisdiction to review their claim.

3          **F.        Sovereign Immunity**

4          "Absent abrogation, the Eleventh Amendment prohibits federal and state courts from

5    entertaining suits against unconsenting states and their instrumentalities.  However, suits seeking

6    prospective relief under federal law may ordinarily proceed against state officials sued in their

7    official capacities."  *Planned Parenthood*, 122 F.4th at 841–42 (citing *Ex parte Young*, 209 U.S.

8    123, 157 (1908)).  For this exception to apply, however, the official must have a "fairly direct"

9    connection with enforcement of the challenged statute, and a "generalized duty to enforce state

10   law or general supervisory power over the persons responsible for enforcing the challenged

11   provision will not" suffice.  *See Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998).

12          Plaintiffs bring suit against California's Governor, Attorney General, and Superintendent,

13   but they fail to allege any facts that demonstrate the Governor or the Attorney General have or will

14   have direct involvement in the enforcement of any provision of AB 715.  Plaintiffs' failure is

15   dispositive.  *See Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467,

16   469–70 (9th Cir. 1999) (governor retained sovereign immunity where an independent commission,

17   the members of which were appointed by governor, enforced the challenged statute); *Whole*

18   *Woman's Health v. Jackson*, 595 U.S. 30, 42 (2021) (state attorney general retained sovereign

19   immunity where plaintiffs failed to point to "enforcement authority the [A]ttorney [G]eneral

20   possesses in connection with" the challenged code or law).

21          Because the Eleventh Amendment deprives this Court of jurisdiction over Governor

22   Newsom and Attorney General Bonta, the Court DISMISSES those two parties from this action.

23   *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir.

24   2013) (dismissing defendants with sovereign immunity at preliminary injunction stage).

25   **IV.    CONCLUSION**

26          Because the Court is without jurisdiction to adjudicate any of Plaintiffs' claims at this time,

27   the Court DENIES Plaintiffs' motion for preliminary injunction.  The Court also DISMISSES

28   Governor Newsom and Attorney General Bonta from this action on sovereign immunity grounds.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Plaintiffs and Defendants are directed to meet and confer regarding next steps for how this case should proceed.  The Court sets a case management conference for Tuesday, January 27, 2026, at 9:00 a.m.  The parties shall file a joint case management statement by January 9, 2026.

**IT IS SO ORDERED.**

Dated:  December 31, 2025

_____

Noël Wise
United States District Judge