1
2
3
4
5
6
7
8
9
10
11
12
13

ROB BONTA
Attorney General of California
DARRELL W. SPENCE (SBN: 248011)
Supervising Deputy Attorney General
ANDREW Z. EDELSTEIN (SBN: 218023)
KATHERINE BRUCK (SBN: 342536)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6307
  Fax: (916) 731-2125
  E-mail: Andrew.Edelstein@doj.ca.gov
       Katherine.Bruck@doj.ca.gov
*Attorneys for Superintendent of Public Instruction
Tony Thurmond, in his official capacity*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANDREA PRICHETT; JONAH OLSON; DUNIA HASSAN; KAUSER ADENWALA; LA EDUCATORS FOR JUSTICE IN PALESTINE; ABDULRAHMAN JARRAR,** on behalf of his minor child, J.J.; **LINDA KHOURY-UMILI,** on behalf of her minor children, Y.U. and L.U.; **ALICE FINEN,** on behalf of her minor child, G.F., <br><br> Plaintiffs, <br><br> **v.** <br><br> **GAVIN NEWSOM, Governor of the State of California, in his official capacity; ROB BONTA, Attorney General of California, in his official capacity; and TONY THURMOND, California Superintendent of Public Education, in his official capacity,** <br><br> Defendants. | No. 5:25-cv-09443-NW <br><br> **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:          April 1, 2026 <br> Time:          9:00 a.m. <br> Courtroom:   3 <br> Judge:         The Honorable Nöel Wise <br> Trial Date:   Not Set <br> Action Filed: November 2, 2025 |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on April 1, 2026, at 9:00 a.m., or as soon thereafter as the

3    matter may be heard before the Honorable Nöel Wise in Courtroom 3 of the United States District

4    Court for the Northern District of California, San Jose Division, located at 280 South 1st Street

5    San Jose, CA 95113, Defendant Tony Thurmond, Superintendent of Public Education in his

6    official capacity as head of California Department of Education (CDE), will and does hereby

7    move to dismiss the Complaint.

8        Defendant respectfully requests that the Court dismiss the Complaint without leave to

9    amend under Federal Rules of Civil Procedure 12(b)(1) and (6) on the following grounds, which

10   are discussed in greater depth in the accompanying memorandum.  First, Plaintiffs' claims are not

11   prudentially ripe. *See* ECF No. 72 at 10–11, 19–20.  Second, Student Plaintiffs lack standing. *See*

12   *id.* at 19–20.  Third, even if Plaintiffs had justiciable claims—and the Court has correctly held

13   that they do not—Plaintiffs' claims suffer from fatal and incurable defects: Plaintiffs bring a

14   vagueness claim, but "AB 715 is not vague," *id.* at 18, and to the extent the claim challenges the

15   National Strategy, CDE is not a proper defendant; Teacher Plaintiffs bring a First Amendment

16   claim, but they "have failed to allege an adequate First Amendment violation," *id*. at 16; Plaintiffs

17   bring an overbreadth claim, but "Plaintiffs fail to make the required showing for a successful

18   overbreadth claim," *id*.; and AB 715 survives constitutional scrutiny on its face because it is in

19   furtherance of a legitimate pedagogical interest—preventing an antisemitic school environment.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1    This motion is based upon this Notice, the accompanying Memorandum of Points and

2    Authorities, the papers and pleadings on file in this action, and such matters as may be presented

3    to the Court at the time of the hearing.

4    Dated: January 30, 2026                    Respectfully submitted,

5                                               ROB BONTA
                                               Attorney General of California
6                                               DARRELL W. SPENCE
                                               Supervising Deputy Attorney General
7

8                                               /s/ Andrew Z. Edelstein
                                               ANDREW Z. EDELSTEIN
9                                               Deputy Attorney General
                                               *Attorneys for Superintendent of Public Instruction*
10                                              *Tony Thurmond, in his official capacity*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

OVERVIEW OF AB 715 ....................................................................................... 2

SUMMARY OF THE COMPLAINT ..................................................................... 3

THE COURT'S ORDER DATED DECEMBER 31, 2025 ..................................... 4

LEGAL STANDARDS ........................................................................................... 4

ARGUMENT .......................................................................................................... 5

    I.    THE COURT LACKS JURISDICTION ...................................................... 5

        A.    Plaintiffs' Claims Are Not Ripe ...................................................... 5

        B.    Student Plaintiffs Lack Standing ..................................................... 6

    II.    PLAINTIFFS' CLAIMS ARE ALSO SUBSTANTIVELY DEFECTIVE ................................. 7

        A.    The First Claim Alleging Unconstitutional Vagueness Must Be Dismissed ....................................................................................... 7

            1.    "Antisemitism" Is Not a Vague Term ............................... 8

            2.    CDE Is Immune to Any Challenge Based on AB 715's Reference to the National Strategy ............................... 11

            3.    AB 715's Reference to the National Strategy Does Not Render It Vague ................................................................ 13

        B.    The Second Claim Alleging Violation of Teacher Plaintiffs' First Amendment Rights Must Be Dismissed ................................ 13

            1.    Teacher Plaintiffs Do Not Have a First Amendment Right to Dictate Curriculum .......................................... 13

            2.    Teacher Plaintiffs Fail to Plead Overbreadth ................. 15

        C.    The Third Claim Alleging Violation of Student Plaintiffs' First Amendment Rights Must Be Dismissed ................................ 18

            1.    Student Plaintiffs Fail to State a Plausible Claim for Relief ......... 18

            2.    Student Plaintiffs Fail to Plead That AB 715 Violates Their First Amendment Right to Receive Information .......................... 18

            3.    Student Plaintiffs Fail to Plead Overbreadth .................. 21

        D.    Leave to Amend Should Be Denied Based on Futility ............................ 21

CONCLUSION ..................................................................................................... 22

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

*Alaska Right to Life Pol. Action Comm. v. Feldman*
  504 F.3d 840 (9th Cir. 2007)..................................................................... 6

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*
  557 F.3d 1177 (11th Cir. 2009)................................................................. 20

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*
  418 F.3d 600 (6th Cir. 2005)..................................................................... 10

*Arce v. Douglas*
  793 F.3d 968 (9th Cir. 2015)................................... 11, 15, 17, 18, 19, 20, 22

*Ark. Educ. Television Comm'n v. Forbes*
  523 U.S. 666 (1998) ................................................................................... 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................... 5, 15, 18, 19

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*
  457 U.S. 853 (1982) ................................................................................... 20

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ..................................................................................... 5

*Butcher v. Knudsen*
  38 F.4th 1163 (9th Cir. 2022)................................................................. 9, 10

*Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*
  885 F.3d 560 (9th Cir. 2018)..................................................................... 10

*Cal. Tchrs. Ass'n v. State Bd. of Educ.*
  271 F.3d 1141 (9th Cir. 2001).................................................................... 15

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
  824 F.3d 1156 (9th Cir. 2016)..................................................................... 5

*City of Chicago v. Morales*
  527 U.S. 41 (1999) ..................................................................................... 17

*City of Las Vegas v. Foley*
  747 F.2d 1294 (9th Cir. 1984).................................................................... 19

*City of San Diego v. Roe*
  543 U.S. 77 (2004) ..................................................................................... 17

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) ..................................................................................... 7

*CPR for Skid Row v. City of Los Angeles*
  779 F.3d 1098 (9th Cir. 2015)..................................................................... 8

*Crownholm v. Moore*
  652 F. Supp. 3d 1155 (E.D. Cal. 2023)..................................................... 16

*Cruz v. Select Portfolio Servicing, Inc.*
  No. 19-cv-00283-LHK, 2019 WL 2299857 (N.D. Cal. May 30, 2019) ................ 22

*Downs v. L.A. Unified Sch. Dist.*
  228 F.3d 1003 (9th Cir. 2000)....................................................... 14, 15, 19

*Epperson v. Arkansas*
  393 U.S. 97 (1968) ..................................................................................... 18

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page

*Ex Parte Young*
    209 U.S. 123 (1908) ........................................................................... 12
*Flaxman v. Ferguson*
    151 F.4th 1178 (9th Cir. 2025) ............................................................. 5
*Frederickson v. San Diego Cnty. Bd. of Supervisors*
    No. 21-cv-1958, 2022 WL 485003 (S.D. Cal. Feb. 16, 2022) .................. 14
*Gammoh v. City of La Habra*
    395 F.3d 1114 (9th Cir. 2005) ............................................................ 12
*Garcetti v. Ceballos*
    547 U.S. 410 (2006) .......................................................................... 14
*Good News Emp. Ass'n v. Hicks*
    223 F. App'x 734 (9th Cir. 2007) ................................................ 10, 11, 17
*Grayned v. City of Rockford*
    408 U.S. 104 (1972) ............................................................................ 8
*Hafer v. Melo*
    502 U.S. 21 (1991) ........................................................................... 12
*Hazelwood Sch. Dist. v. Kuhlmeier*
    484 U.S. 260 (1988) ............................................................ 18, 20, 21, 22
*Hernandez v. City of Phoenix*
    43 F.4th 966 (9th Cir. 2022) ...................................................... 16, 17, 21
*Høeg v. Newsom*
    652 F. Supp. 3d 1172 (E.D. Cal. 2023) .............................................. 12
*Holder v. Humanitarian L. Project*
    561 U.S. 1 (2010) ............................................................................. 10
*Hotel & Motel Ass'n of Oakland v. City of Oakland*
    344 F.3d 959 (9th Cir. 2003) ............................................................. 10
*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*
    515 U.S. 557 (1995) ..................................................................... 10, 17
*I.N.S. v. Cardoza-Fonseca*
    480 U.S. 421 (1987) ......................................................................... 12
*Johnson v. Poway Unified Sch. Dist.*
    658 F.3d 954 (9th Cir. 2011) ...................................................... 13, 14, 22
*Kennedy v. Bremerton Sch. Dist.*
    597 U.S. 507 (2022) .................................................................. 13, 14, 22
*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ............................................................................ 4
*Kroessler v. CVS Health Corp.*
    977 F.3d 803 (9th Cir. 2020) .......................................................... 5, 22
*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ............................................................................ 7
*Maya v. Centex Corp.*
    658 F.3d 1060 (9th Cir. 2011) .............................................................. 5
*McCarthy v. Fletcher*
    207 Cal. App. 3d 130 (1989) ............................................................. 17

1

<u>TABLE OF AUTHORITIES</u>
(continued)

2

<u>Page</u>

3    *Napa Valley Publ'g Co. v. City of Calistoga*
     225 F. Supp. 2d 1176 (N.D. Cal. 2002) ................................................................................ 19
4    *Nat'l Endowment for the Arts v. Finley*
     524 U.S. 569 (1998) ............................................................................................................... 15
5    *Oklevueha Native Am. Church of Haw., Inc. v. Holder*
6    676 F.3d 829 (9th Cir. 2012) ................................................................................................... 6
     *Orkin v. Taylor*
7    487 F.3d 734 (9th Cir. 2007) ................................................................................................. 12
8    *Papasain v. Allain*
     478 U.S. 265 (1986) ............................................................................................................... 12
9    *Pennhurst State School and Hospital v. Halderman*
     465 U.S. 89 (1984) ................................................................................................................. 12
10   *Pickering v. Bd. of Educ.*
     391 U.S. 563 (1968) ............................................................................................................... 13
11   *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*
12   122 F.4th 825 (9th Cir. 2024) ................................................................................................. 7
     *Project Veritas v. Schmidt*
13   125 F.4th 929 (9th Cir. 2025) ................................................................................................. 5
     *Roe v. Critchfield*
14   137 F.4th 912 (9th Cir. 2025) ............................................................................................... 19
     *Rose v. Locke*
15   423 U.S. 48 (1975) ................................................................................................................. 11
16   *Rosenberger v. Univ. of Va.*
     515 U.S. 819 (1995) ............................................................................................................... 14
17   *Sessions v. Dimaya*
     584 U.S. 148 (2018) ............................................................................................................... 11
18   *Stand With US Ctr. for Legal Just. v. Mass. Inst. of Tech.*
     158 F.4th 1 (1st Cir. 2025) ...................................................................................................... 9
19   *Stockton v. Brown*
20   152 F.4th 1124 (9th Cir. 2025) ........................................................................................... 5, 6
     *Susan B. Anthony List v. Driehaus*
21   573 U.S. 149 (2014) ................................................................................................................. 7
     *Tingley v. Ferguson*
22   47 F.4th 1055 (9th Cir. 2022) ...................................................................................... 8, 11, 22
     *United States v. Arizona*
23   No. 10-cv-1413, 2010 WL 11405085 (D. Ariz. Dec. 10, 2010) ........................................... 12
24   *United States v. Hansen*
     599 U.S. 762 (2023) .......................................................................................................... 16, 17
25   *United States v. O'Brien*
     391 U.S. 367 (1968) ............................................................................................................... 19
26   *United States v. Stevens*
     559 U.S. 460 (2010) ............................................................................................................... 15
27   *United States v. Williams*
28   553 U.S. 285 (2008) ................................................................................................................. 8

vi

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Valle del Sol Inc. v. Whiting*
  732 F.3d 1006 (9th Cir. 2013)............................................................................ 11
*Vargas v. Gastelo*
  No. 17-cv-9143-PJW, 2018 WL 4292202 (C.D. Cal. Sept. 7, 2018) ..................... 17
*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*
  455 U.S. 489 (1982) ..................................................................................... 9, 11
*Virginia v. Hicks*
  539 U.S. 113 (2003).......................................................................................... 17
*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008).......................................................................................... 16
*Will v. Mich. State Police*
  491 U.S. 58 (1989)............................................................................................ 12
*Wisconsin v. Mitchell*
  508 U.S. 476 (1993).......................................................................................... 17
*Wolfe v. Strankman*
  392 F.3d 358 (9th Cir. 2014)............................................................................. 12
*Yamada v. Snipes*
  786 F.3d 1182 (9th Cir. 2015) ............................................................................ 9

**STATUTES**
42 U.S.C. § 1983 ................................................................................................. 12
Assemb. B. 715, 2025–26 Reg. Sess. (Cal. 2025) ............................ 2, 3, 4, 6, 8, 9, 10, 15, 20, 21
Cal. Educ. Code § 220......................................................................................... 2, 9
Cal. Educ. Code § 244................................................................................. 2, 3, 15, 20
Cal. Educ. Code § 33801.................................................................................. 12, 15
Cal. Educ. Code § 33802..................................................................................... 12
Cal. Educ. Code § 33803.1..................................................................... 6, 12, 13, 15, 16
Cal. Educ. Code § 51500................................................................................ 2, 15, 20
Cal. Educ. Code § 51501.................................................................................. 15, 20
S.B. 48, 2025–26 Reg. Session (Cal. 2025) .............................................................. 3

# INTRODUCTION

The Court has held that it lacks subject matter jurisdiction over this case and that Plaintiffs fail to establish viable claims. *See* ECF No. 72 (the Order). The Court made this holding based on Plaintiffs' Complaint, the parties' and eight amici's exhaustive briefing on all issues, Plaintiffs' declarations, and after a full hearing. Yet, Plaintiffs did not dismiss this case. Defendant now respectfully requests that the Court take that next step and dismiss it.[1]

First, Plaintiffs' claims are not prudentially ripe, as the Court already held. Crucial aspects of Assembly Bill 715 (AB 715)—including the staffing of the Office of Civil Rights and appointment of the Antisemitism Prevention Coordinator—have not yet occurred. And Plaintiffs will not be prejudiced by the Court declining to address their claims now because the Teacher Plaintiffs are already subject to the alleged harms they complain about under the existing Uniform Complaint Procedure provisions of the Education Code, and the Student Plaintiffs fail to allege any injury. *See* Order at 10–11, 19–20.

Second, Student Plaintiffs lack standing because they fail to allege an injury-in-fact, as the Court already held. AB 715 does not regulate the Student Plaintiffs' speech, and the Student Plaintiffs' alleged harm—an inability to receive information from their teachers—is an unfounded fear based only on speculation. *See id.* at 19–20.

Third, even if Plaintiffs had justiciable claims—and the Court has correctly held that they do not—Plaintiffs' claims suffer from additional fatal and incurable defects. Plaintiffs bring a vagueness claim, but "AB 715 is not vague," *id.* at 18, and to the extent the claim challenges the National Strategy, CDE is not a proper defendant. The Teacher Plaintiffs bring a First Amendment claim, but they "have failed to allege an adequate First Amendment violation." *Id.* at 16. Plaintiffs bring an overbreadth claim, but "Plaintiffs fail to make the required showing for a successful overbreadth claim." *Id.* Lastly, AB 715 survives constitutional scrutiny on its face because it is in furtherance of a legitimate pedagogical interest—preventing an antisemitic school

---

[1] The sole remaining defendant is State Superintendent of Public Instruction Tony Thurmond, sued in his official capacity as head of the California Department of Education (CDE or Defendant). Given the Court's recent and generous attention to this case in conjunction with the Order, Defendant presumes some familiarity.

1

environment.

For the foregoing reasons, the motion to dismiss should be granted, without leave to amend.

### OVERVIEW OF AB 715

AB 715's legislative findings indicate that California enacted AB 715 because "Jewish and Israeli American pupils across California are facing a widespread surge in antisemitic discrimination, harassment, and bullying . . . so severe and pervasive that it has placed Jewish pupils at risk and limited, or completely impeded, their ability to learn or engage in school programs or activities." Assemb. B. 715 § 1(c), 2025–26 Reg. Sess. (Cal. 2025).[2] AB 715 seeks to protect students from an "antisemitic school environment," which legislative findings define as "a school environment that subjects pupils or employees who are, or are perceived to be, Jewish or Israeli to harassment, discrimination, or violence based on their religion, nationality, race, or ethnicity." *Id*. § 1(h).

Longstanding California law prohibits "discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code, including immigration status, in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid." Cal. Educ. Code § 220. The Education Code also prohibits specific types of discrimination in schools premised on section 220's protected categories, *see, e.g.*, *id.* § 244 (prohibiting instructional materials that "subject a pupil to unlawful discrimination pursuant to [s]ection 220"); *id.* § 51500 (prohibiting instruction that "promotes a discriminatory bias on the basis of . . . a characteristic listed in [s]ection 220"), and Plaintiffs do not challenge these other statutes.

AB 715 supports these preexisting antidiscrimination statutes in several ways. Consistent with those laws, it further clarifies the prohibition on the use of instructional materials, professional development materials, and curriculum that would subject students to unlawful

---

[2] Plaintiffs do not dispute that antisemitism exists in schools, nor that preventing antisemitism is a legitimate legislative purpose.

discrimination under section 220 or that are factually inaccurate. *See* AB 715 §§ 2, 7–8. AB 715 also creates an Office of Civil Rights within the Government Operations Agency to address all forms of discrimination, which will employ an "Antisemitism Prevention Coordinator" (to be appointed by the Governor and confirmed by the Senate) who will develop resources and provide education, make recommendations and reports, work with community stakeholders, and engage with school districts concerning antisemitism in public schools. *See id.* § 5.[3] AB 715 also establishes that prohibited discrimination in instruction and school-sponsored activities does not require members of a protected group to be present while the discriminatory bias is occurring for the act to be considered discriminatory. *See id.* § 7. Finally, it clarifies the forms of corrective action that may or must be provided if the California Department of Education makes a finding of discriminatory materials under Cal. Educ. Code § 244 via an established complaint process, including a specific remedy that may be ordered if the finding "involves antisemitism." *See id.* §§ 9, 10.

## SUMMARY OF THE COMPLAINT

Plaintiffs filed their complaint on November 2, 2025. ECF No. 1 (Compl.). Plaintiffs are teachers (Teacher Plaintiffs) and students (Student Plaintiffs) in California public schools. *Id.* ¶ 7. Teacher Plaintiffs allegedly have taught about "subjects related to Palestine, Israel, and the Middle East" and wish to continue doing so in the future. *See id.* ¶¶ 7, 259, 288. Prior to the enactment of AB 715, Teacher Plaintiffs were subject to antidiscrimination complaints related to comments about Israel and Palestine. *See id.* ¶¶ 53–107. Student Plaintiffs allege that the law interferes with their ability to receive that information from their teachers. *Id.* ¶¶ 8, 17.

Plaintiffs bring a facial challenge to AB 715, alleging that AB 715: (1) is void for vagueness in violation of Teacher Plaintiffs' Due Process rights; (2) is overbroad and viewpoint discriminatory in violation of Teacher Plaintiffs' First Amendment rights; and (3) violates Student Plaintiffs' First Amendment right to receive information. *See id.* ¶¶ 247–306. Plaintiffs'

---

[3] SB 48, signed concurrently with AB 715, creates additional Coordinators within the Office of Civil Rights to address other enumerated types of discrimination. *See* S.B. 48, 2025–26 Reg. Session (Cal. 2025).

claims are premised primarily on AB 715's precatory statement that the "United States National Strategy to Counter Antisemitism" (National Strategy) "shall be a basis to inform schools on how to identify, respond to, prevent, and counter antisemitism," AB 715 §1(i). *See, e.g.*, Compl. ¶¶ 4–5, 8–9, 41, 46, 251–57, 272–76; *see also* Order at 7–8, 18–19.

## THE COURT'S ORDER DATED DECEMBER 31, 2025

On December 31, 2025, the Court denied Plaintiffs' motion for a preliminary injunction (ECF No. 15) to halt enforcement of AB 715. *See* Order.

The Court denied the motion as to the Teacher Plaintiffs because their claims are not prudentially ripe. Order at 10–11. The Court further held that the Teacher Plaintiffs' claims "suffer from fatal deficiencies," *id.* at 11, because: (1) Teacher Plaintiffs do not have First Amendment rights while teaching, *id.* at 12–16; (2) Teacher Plaintiffs did not allege an overbreadth claim because they failed to make the showing necessary for a facial overbreadth challenge, which is to put forth the range of activities covered by AB 715 so that the Court could measure the constitutional and unconstitutional applications and allege the facts necessary to consider all applications, *id.* at 16–18; and (3) Teacher Plaintiffs' vagueness claim fails because a "reasonable person reading AB 715 would sufficiently understand what the [L]egislature meant by the word 'antisemitism,'" *id.* at 18–19.

The Court denied the motion as to the Student Plaintiffs on standing grounds, holding that Student Plaintiffs do not have an actual and well-founded fear that AB 715 will be enforced against them. *Id.* at 20. Thus, Student Plaintiffs failed to "sufficiently allege[] that they sustained or will imminently sustain an injury." *Id.* at 20–21.

Finally, the Court dismissed defendants Gavin Newsom and Rob Bonta from the action on the basis of Eleventh Amendment sovereign immunity. *Id.* at 21.

## LEGAL STANDARDS

A plaintiff asserting subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) where it fails to establish either

1    Article III standing or ripeness. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)

2    (standing); *Stockton v. Brown*, 152 F.4th 1124, 1148 (9th Cir. 2025) (ripeness).

3         Dismissal under Federal Rule of Civil Procedure 12(b)(6) is required when a complaint

4    "fails to state a cognizable legal theory" or fails to "allege sufficient factual support for its legal

5    theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). A

6    complaint must "contain sufficient factual matter" to "'state a claim to relief that is plausible on

7    its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

8    U.S. 544, 570 (2007)). While courts assume all well-pleaded facts in the complaint are true, they

9    need not accept unreasonable inferences or conclusory allegations. *Twombly*, 550 U.S. at 570.

10        Leave to amend a complaint should be denied when amendment would be "futile,"

11   including when "no amendment would allow the complaint to withstand dismissal as a matter of

12   law." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020).

13                                    **ARGUMENT**

14   **I.    THE COURT LACKS JURISDICTION**

15        **A.    Plaintiffs' Claims Are Not Ripe**

16        As this Court already found, and as explained below, this case is not yet fit for judicial

17   review under the doctrine of prudential ripeness. *See* Order at 10. Prudential ripeness considers

18   "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of

19   withholding court consideration." *Flaxman v. Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025)

20   (citation modified).[4]

21        The issues Plaintiffs raise are not yet fit for judicial decision because "crucial aspects of AB

22   715 are still in motion," notably the appointment of the Director of the newly-created Office of

23   Civil Rights and the appointment of the Antisemitism Prevention Coordinator. *See* Order at 10.

24   AB 715 requires the Office of Civil Rights and its yet-to-be-appointed Antisemitism Prevention

_____

25        [4] Although the Court applied its ripeness analysis to only the Teacher Plaintiffs, it applies
26   equally to the Student Plaintiffs for the reasons discussed above. Additionally, Student Plaintiffs'
     claims are not ripe pursuant to Article III because they fail to allege a sufficient injury. This is
27   because in the pre-enforcement context, constitutional ripeness "overlaps with the analysis of
     'injury in fact' for Article III standing." *See Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th
28   Cir. 2025).

1  Coordinator to provide resources for addressing antisemitism. For example, the Coordinator is

2  charged with "provid[ing] antisemitism education to teachers, staff, governing board or body

3  members, administrators, and other local educational agency personnel to identify and proactively

4  prevent antisemitism." *See* AB 715 § 5 (creating Cal. Educ. Code § 33803.1(b)(1)). This office

5  has "not yet had an opportunity" to implement AB 715, which "militates in favor of declining

6  jurisdiction." *See Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 850 (9th Cir.

7  2007). In this situation, it is appropriate for this Court to "await[] an actual application of the new

8  [law]" rather than "hypothesize about how the law might be applied." *See Oklevueha Native Am.*

9  *Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837–38 (9th Cir. 2012).

10      With respect to the second element of prudential standing, there is no risk of hardship to the

11  parties by denying review at this stage. As this Court explained, Teacher Plaintiffs "are already

12  subject to complaints and disciplinary actions . . . under the [then] *current California Education*

13  *Code.*" *See* Order at 10 (emphasis in original) (citing Compl. ¶¶ 53–107). And there is no

14  indication that AB 715 will affect the way that such complaints are filed and adjudicated. *See id.*

15  Similarly, there is no risk of hardship to Student Plaintiffs because they fail to allege any harm.

16  *See id.* at 19–20.

17      For these reasons, Teacher and Student Plaintiffs' claims are prudentially unripe, which

18  denies this Court of jurisdiction and requires dismissal. *See Stockton*, 152 F.4th at 1148 (the

19  prudential ripeness doctrine provides "an independent basis for dismissal").

20      **B.**    **Student Plaintiffs Lack Standing**

21      Plaintiffs have the burden of establishing the irreducible constitutional minimum of

22  standing, which contains three elements.[5] First, the plaintiff must have suffered an injury in

23  fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

24  actual or imminent, not conjectural or hypothetical. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555,

25

26        [5] Defendant continues to maintain that Teacher Plaintiffs—including organizational
plaintiff LA Educators for Justice in Palestine—lack Article III standing, for the reasons

27  explained in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction. *See* ECF
No. 35 at 4–10. Because the Court previously found that Teacher Plaintiffs have Article III

28  standing, *see* Order at 9, Defendant does not repeat those arguments here.

560 (1992). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action, and not the result of the independent action of a third party not before the court. *Id*. Third, it must be likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Id*. at 561.

As this Court held, Student Plaintiffs lack Article III standing because they fail to allege "an adequate and imminent injury." *See* Order at 19. First, Student Plaintiffs' own speech is not implicated by AB 715, which in no way regulates students. *See id.* ("Student Plaintiffs do not (and cannot) allege that their *own* speech has been or will be chilled."). Student Plaintiffs therefore cannot establish an "intention to engage in a course of conduct" that is "proscribed by" the challenged statute. *See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Second, Student Plaintiffs' alleged injury—their inability to receive certain information from their teachers—cannot sustain a facial challenge to AB 715. Student Plaintiffs' alleged injury is "too speculative to confer standing"; in other words, their unexplained and unadorned subjective fear that information might be withheld from them is not enough. *See* Order at 20. This is because a "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified; emphasis in original). Accordingly, Student Plaintiffs lack Article III standing and their claim must be dismissed.

## II.    PLAINTIFFS' CLAIMS ARE ALSO SUBSTANTIVELY DEFECTIVE

Although the complaint can and should be dismissed on jurisdictional grounds for the reasons explained above, it also fails to state a claim on the merits. AB 715 is neither unconstitutionally vague nor violative of the First Amendment.

### A.    The First Claim Alleging Unconstitutional Vagueness Must Be Dismissed

Teacher Plaintiffs bring the Complaint's first claim, which alleges that AB 715 is void for vagueness pursuant to the Fourteenth Amendment. The Court has already held that AB 715 is not unconstitutionally vague. *See* Order at 18–19. As explained below, the Court's holding was

7

1  correct and mandates dismissal of Plaintiffs' first claim.

2        1.    **"Antisemitism" Is Not a Vague Term**

3        As the Court recognized, Plaintiffs make two "inconsistent" vagueness arguments. Order at

4  18.  First, "they insist AB 715 is vague because it fails to define antisemitism." *Id*. The Court,

5  however, held that a "reasonable person reading AB 715 would sufficiently understand what the

6  legislature meant by the word 'antisemitism.' That is enough." *Id.* (citing *Tingley v. Ferguson*, 47

7  F.4th 1055, 1089 (9th Cir. 2022)).[6]

8        The Court's holding is correct. Plaintiffs allege that AB 715 fails to define the term

9  "antisemitism," Compl. ¶¶ 250– 58, and therefore does not "give the person of ordinary

10 intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,"

11 *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "The operative question under the fair

12 notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley*,

13 47 F.4th at 1089.[7]

14       AB 715's legislative findings provide that "[a]n antisemitic school environment means a

15 school environment that subjects pupils or employees who are, or are perceived to be, Jewish or

16 Israeli to harassment, discrimination, or violence based on their religion, nationality, race, or

17 ethnicity." AB 715 § 1(h). AB 715's legislative findings further state that "antisemitic

18 discrimination may be classified as discrimination on the basis of religion, national origin,

19 ethnicity, or some combination of these factors." *Id.* § 1(j).

20       "Where, as here, plaintiffs make a facial constitutional challenge to a state law, 'a federal

21 court must, of course, consider any limiting construction that a state court or enforcement agency

22 has proffered.'" *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1103 (9th Cir. 2015)

23

24       [6] To the extent Plaintiffs attempt to expand their vagueness claim to argue AB 715's
   references to "unlawful discrimination" and "factually accurate" information are vague,
25 Defendant incorporates its arguments on those issues from its Opposition to the Motion for
   Preliminary Injunction. *See* ECF No. 35 at 17–19.
26       [7] While a law can also be void for vagueness because it "is so standardless that it authorizes
27 or encourages seriously discriminatory enforcement," *see United States v. Williams*, 553 U.S.
   285, 304 (2008), Plaintiffs do not allege that AB 715 falls into that category. *See* Compl. ¶¶ 247–
28 69.

1   (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982)).

2   Although the language quoted above appears in the legislative intent section rather than the

3   amendments to the Education Code, AB 715 nonetheless makes clear that antisemitism can be

4   understood as "harassment, discrimination, or violence" against students or employees "who are,

5   or are perceived to be, Jewish or Israeli," and can take the form of discrimination on the basis of

6   "religion, national origin, ethnicity, or some combination of these factors." *See* AB 715 §§ 1(h),

7   1(j). AB 715 is "readily susceptible" to this limiting construction, which should therefore be

8   adopted by the Court. *See Yamada v. Snipes*, 786 F.3d 1182, 1188 (9th Cir. 2015).

9          AB 715's conception of antisemitism aligns with standard dictionary definitions. *See*

10  *Butcher v. Knudsen*, 38 F.4th 1163, 1173 (9th Cir. 2022) (courts may consider dictionary

11  definitions in determining whether a statutory term is vague). For example, the First Circuit

12  recently recognized that Merriam-Webster Dictionary defines antisemitism as "hostility toward or

13  discrimination against Jews as a religious, ethnic, or racial group." *See Stand With US Ctr. for*

14  *Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 17 n.13 (1st Cir. 2025). While AB 715

15  additionally incorporates Israeli individuals as possible targets of antisemitism, that inclusion is

16  not constitutionally problematic. AB 715 states that Israeli *people* may not be subject to

17  discrimination based on their religion, nationality, or ethnicity. AB 715's conception of

18  antisemitism relies upon a standard prohibition against discrimination comprehensible by a

19  reasonable person and does not target political *speech*.

20         Crucially, AB 715 amends sections of the Education Code that *already* reference section

21  220's prohibition on discrimination, and expressly incorporates section 220's standard for

22  determining whether discrimination exists. *See, e.g.*, AB 715 § 2 (amending section 244 to add

23  three provisions referencing section 220); *id.* § 7 (amending section 51500's existing requirement

24  that teachers and school districts not "promote a discriminatory bias . . . pursuant to a

25  characteristic listed in [s]ection 220"). Section 220, in turn, prohibits discrimination based on

26  "disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion,

27  sexual orientation, or any other [protected] characteristic[.]" *See* Cal. Educ. Code § 220. This

28  longstanding provision—which Plaintiffs do not challenge—both mirrors AB 715's

9

1  understanding of antisemitism as "discrimination on the basis of religion, national origin,

2  ethnicity, or some combination of these factors," *see* AB 715 § 1(j), and provides a well-

3  established antidiscrimination mandate that constrains the meaning of the term "antisemitism" as

4  used in AB 715.

5          Given AB 715's express reference to and incorporation of section 220, concluding that

6  AB 715 is void for vagueness would necessarily render void section 220 along with a litany of

7  other similarly drafted antidiscrimination measures. *See Butcher*, 38 F.4th at 1176 ("[I]n assessing

8  a vagueness challenge, [courts] must consider [state] law as a whole."). It cannot be the case that

9  this type of broad prohibition on discrimination is unconstitutionally vague. As the Supreme

10  Court has recognized, antidiscrimination statutes are "well within the State's usual power to enact

11  when a legislature has reason to believe that a given group is the target of discrimination, and

12  they do not, as a general matter, violate the First or Fourteenth Amendments." *Hurley v. Irish-Am.*

13  *Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995).

14          Moreover, Section 1(d) of AB 715's legislative findings provides "examples of the types

15  of conduct to which [it] applies," which further establishes that there is no vagueness. *See Hotel*

16  *& Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 973 (9th Cir. 2003); *see also Good*

17  *News Emp. Ass'n v. Hicks*, 223 F. App'x 734, 736 (9th Cir. 2007) (policy prohibiting

18  "discrimination and/or harassment based on sexual orientation" and including illustrative

19  examples was not vague); *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d

20  600, 609 (6th Cir. 2005) ("The inclusion of examples further alleviates vagueness problems[.]").

21  Plaintiffs allege that these examples of antisemitism and the reference to the National Strategy

22  will chill speech, but a chilling effect alone, assuming one exists, does not render a statute vague.

23  *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010).

24          Finally, as already discussed, AB 715 requires the Office of Civil Rights to provide

25  resources to aid in addressing antisemitism. *See* AB 715 § 5. These resources, "even if lacking the

26  force of law [themselves], can clarify what conduct is expected of a person subject to a particular

27  [measure] and thus mitigate against vagueness." *See Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*,

28  885 F.3d 560, 571 (9th Cir. 2018). Even in the pre-enforcement context, the fact that such

1   materials may be forthcoming alleviates vagueness concerns. *See Hoffman Ests.*, 455 U.S. at 504

2   (in pre-enforcement vagueness challenge, the possibility that the defendant "*may adopt*

3   *administrative regulations that will sufficiently narrow potentially vague or arbitrary*

4   *interpretations*" counseled against invalidating the challenged ordinance) (emphasis added).

5          It is true that AB 715 does not define antisemitism with mathematical exactitude. But "the

6   degree of vagueness that the Constitution allows depends in part on the nature of the enactment."

7   *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (citation modified). Determining what constitutes

8   discrimination is often nuanced and highly fact-dependent, and thus some amount of vagueness is

9   "an inherent, irreducible part" of any antidiscrimination provision. *See Good News*, 223 F. App'x

10  at 736; *see also Rose v. Locke*, 423 U.S. 48, 49–50 (1975); *Arce v. Douglas*, 793 F.3d 968, 988

11  (9th Cir. 2015) ("*Arce*") (terms "resentment toward a race or class of people" and "advocate

12  ethnic solidarity instead of the treatment of pupils as individuals" were not unconstitutionally

13  vague as used in state law that sought to "reduce racism in schools"). Through its statement of

14  legislative intent and incorporation of section 220, AB 715's references to antisemitism employ a

15  "comprehensible normative standard" typical of antidiscrimination statutes, *see Valle del Sol Inc.*

16  *v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013) (quoting *Hoffman Ests.*, 455 U.S. at 495 n.7), and

17  thereby provide sufficient notice of the bill's provisions. Because "[a] reasonable person reading

18  AB 715 would sufficiently understand what the legislature meant by the word 'antisemitism,'"

19  the statute facially passes constitutional muster. *See* Order at 19 (citing *Tingley*, 47 F.4th at 1089).

20          **2.    CDE Is Immune to Any Challenge Based on AB 715's Reference to
                    the National Strategy**
21

22          Plaintiffs' second theory of vagueness is tied to AB 715's reference to the National

23  Strategy, which itself references the International Holocaust Remembrance Alliance (IHRA)

24  definition of antisemitism. Order at 18. However, as to this theory, Plaintiffs have sued the wrong

25  defendant.

26          An official capacity suit against Superintendent Thurmond is merely an alternative way of

27  pleading an action against the state agency (CDE) that he leads. *See Wolfe v. Strankman*, 392 F.3d

28  358, 364–65 (9th Cir. 2014), *overruled on other grounds*, *Munoz v. Superior Ct. of L.A. Cnty.*, 91

                                        11

F.4th 977 (9th Cir. 2024). Absent consent, a federal lawsuit against a state agency such as CDE is barred by the Eleventh Amendment. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). Neither CDE nor the Superintendent in his official capacity are "persons" who can be used under 42 U.S.C. § 1983. *See Will v. Mich. State Police*, 491 U.S. 58, 69–71 (1989). Superintendent Thurmond, as a public official of CDE, is entitled to the same Eleventh Amendment immunity as CDE. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiffs' suit for injunctive relief does not satisfy the criteria for the exception to the rule that such a suit against a state official in his official capacity is barred. Specifically, Plaintiffs do not and cannot plausibly allege that the Superintendent has "direct responsibility" for enforcing the challenged "law," *Papasain v. Allain*, 478 U.S. 265, 277–78 (1986), and therefore cannot invoke *Ex Parte Young*, 209 U.S. 123, 157 (1908).

Even if the National Strategy's reference to the IHRA definition had legal effect—which it does not—that reference does not apply to CDE.[8] AB 715's only substantive (as opposed to precatory) reference to the National Strategy, which in turn references the IHRA definition, is found in Education Code § 33803.1(c). That section provides that the National Strategy "shall be a basis to inform the Antisemitism Prevention Coordinator on how to identify, respond to, prevent, and counter antisemitism." The Antisemitism Coordinator does not work for CDE. He or she will work for the Office of Civil Rights, *see* Cal. Educ. Code § 33801(a) ("the Office of Civil Rights shall employ the Antisemitism Prevention Coordinator"), and the Office of Civil Rights is within the Government Operations Agency, not within CDE, s*ee id.* §§ 33801(a), 33802.

---

[8] Besides the reference Education Code § 33803.1(c), AB 715's only other reference to the National Strategy is in the precatory statements preceding the statute's substantive amendments. As the Court's order indicates, *see* Order at 11 n.8, AB 715's precatory provisions express legislative intent, but they "do not in themselves create individual rights or, for that matter, any enforceable law." *See Orkin v. Taylor*, 487 F.3d 734, 739 (9th Cir. 2007); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 441 (1987) (contrasting mandatory and "precatory" provisions of a statute); *United States v. Arizona*, No. 10-cv-1413, 2010 WL 11405085, at *6 (D. Ariz. Dec. 10, 2010) (a court "cannot enjoin a purpose; the . . . Legislature is free to express its viewpoint and intention as it wishes," but legislative intent "has no operative function").

Expressions of legislative intent do not "define the prohibited conduct," but rather "merely explain the context in which the prohibition applies." *See Høeg v. Newsom*, 652 F. Supp. 3d 1172, 1189 (E.D. Cal. 2023) (citing *Gammoh v. City of La Habra*, 395 F.3d 1114, 1120 (9th Cir. 2005)). This vitiates Plaintiffs' vagueness concerns.

12

Therefore, to the extent Plaintiffs are challenging Education Code § 33803.1(c), CDE is the wrong defendant and has Eleventh Amendment immunity. CDE has no role in enforcing Education Code § 33803.1(c), which applies to an employee of a wholly unrelated government agency. Accordingly, to the extent Plaintiffs challenge AB 715's reference to the National Strategy, this Court has no jurisdiction over CDE as to that allegation nor could it assert a claim as to CDE, and any attempt to do so would be futile.

### 3.    AB 715's Reference to the National Strategy Does Not Render It Vague

Even if CDE were a proper defendant as to the vagueness theory relating to the National Strategy, which it is not, this theory fails for the same reason as their first theory—there is nothing vague about the IHRA definition, as the Court held. *See* Order at 18–19.

For the foregoing reasons, Teacher Plaintiffs' first claim alleging vagueness must be dismissed.

### B.    The Second Claim Alleging Violation of Teacher Plaintiffs' First Amendment Rights Must Be Dismissed

Teacher Plaintiffs allege two theories for their First Amendment Claim: viewpoint discrimination and overbreadth. As the Court already held, *see* Order at 12–18, and for the following reasons, both theories fail.

### 1.    Teacher Plaintiffs Do Not Have a First Amendment Right to Dictate Curriculum

Teachers do not have a First Amendment interest in controlling curriculum, as Teacher Plaintiffs seek to do here. Rather, curriculum constitutes government speech. As this Court recognized, "when a teacher stands before a classroom" delivering "government regulated curricula," "that teacher speaks with the voice of the government." Order at 13 (citing *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 527 (2022)).

In this context, "where the government acts as both sovereign *and employer*," the balancing test established by *Pickering v. Board of Education*, 391 U.S. 563 (1968)—not forum analysis—applies. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011)

13

1   (emphasis in original) (collecting cases). Under *Pickering*, courts consider "whether the plaintiff

2   spoke on a matter of public concern" and "whether the plaintiff spoke as a private citizen or

3   public employee." *Id.* at 961. If a plaintiff speaks as a public employee, then that speech is

4   actually government speech to which the First Amendment does not apply. *See id.* at 966–71;

5   *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1015–16 (9th Cir. 2000).

6       In *Johnson*, the Ninth Circuit held that teachers speak for the government when acting in

7   an official capacity, including during in-class instruction, because their speech "owes its

8   existence" to their positions as teachers. 658 F.3d at 966–71 (display of religious quotes in

9   classroom was not protected by the First Amendment). Indeed, it is "beyond possibility for

10  fairminded dispute" that a teacher's job duties include "speaking to [their] class in [their]

11  classroom during class hours" and therefore a teacher does "not act as a citizen" when teaching

12  students. *Id.* at 967 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006)); *cf. Kennedy*, 597 U.S.

13  at 529–30 (coach acted in a private capacity because "[h]e was not instructing players . . . or

14  engaged in any other speech the District paid him to produce as a coach"). Binding authority

15  makes it abundantly clear that a teacher's instruction of students is government speech. *See*

16  *Johnson*, 658 F.3d at 966–71; *Downs*, 228 F.3d at 1015–16.

17      Because Teacher Plaintiffs' desired speech is government speech, their First Amendment

18  claim necessarily fails. When a public school "is the speaker, its control of its own speech is not

19  subject to the constraints of constitutional safeguards and forum analysis[.]" *Downs*, 228 F.3d at

20  1013; *see also Frederickson v. San Diego Cnty. Bd. of Supervisors*, No. 21-cv-1958, 2022 WL

21  485003, at *3 (S.D. Cal. Feb. 16, 2022) ("Plaintiffs fail to cite any evidence or supporting

22  authority why the Resolution at issue would not be considered government speech and therefore

23  not subject to the First Amendment. In light of this failure, Plaintiffs' . . . overbreadth arguments

24  are also without merit."). A "public school prescribing its curriculum . . . by its nature will

25  facilitate the expression of some viewpoints instead of others." *Downs*, 228 F.3d at 1013 (quoting

26  *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998)); *see also Rosenberger v.*

27  *Univ. of Va.*, 515 U.S. 819, 834 (1995) ("A holding that the University may not discriminate

28  based on the viewpoint of private persons . . . does not restrict the University's own speech which

1  is controlled by different principles.").

2      Simply put, Teacher Plaintiffs fail to plead a First Amendment claim because "teachers

3  have no First Amendment right to influence curriculum as they so choose." *Downs,* 228 F.3d at

4  1015–16.

5              **2.      Teacher Plaintiffs Fail to Plead Overbreadth**

6      As this Court already determined, Plaintiffs fail to establish a viable First Amendment

7  overbreadth claim. Even given the opportunity to present extrinsic evidence and briefing,

8  Plaintiffs failed to even engage with the elements of an overbreadth claim. *See* Order at 16–18.

9  The Complaint's "[t]hreadbare" allegations concerning overbreadth fail for similar reasons. *See*

10 *Iqbal*, 556 U.S. at 678.

11     "Facial invalidation is, manifestly, strong medicine that has been employed by the Court

12 sparingly and only as a last resort." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1155

13 (9th Cir. 2001) (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998)). As a

14 result, a law can only "be invalidated under the First Amendment overbreadth doctrine if 'a

15 substantial number of its applications are unconstitutional, judged in relation to the statute's

16 plainly legitimate sweep.'" *Arce*, 793 F.3d at 984 (quoting *United States v. Stevens*, 559 U.S. 460,

17 473 (2010)).

18     "The first step in an overbreadth analysis is to construe the statute, as 'it is impossible to

19 determine whether a statute reaches too far without first knowing what the statute covers.'" *Id.*

20 AB 715 seeks to prevent an "antisemitic school environment," meaning "a school environment

21 that subjects pupils or employees who are, or are perceived to be, Jewish or Israeli to harassment,

22 discrimination, or violence based on their religion, nationality, race, or ethnicity." AB 715 § 1(h).

23 It does so by adding provisions to the Education Code, which are not specific to antisemitism but

24 rather enhance existing prohibitions on school materials that are discriminatory, factually

25 inaccurate, or biased. *See id.* §§ 2, 7, 8 (amending Cal. Educ. Code §§ 244, 51500, 51501). It also

26 creates the position of Antisemitism Prevention Coordinator within the new Office of Civil

27 Rights. *See id.* § 5 (creating Cal. Educ. Code §§ 33801, 33803.1). The only portion of AB 715

28 codified into law that references the National Strategy—which is the crux of Plaintiffs' claims—

15

1  provides that it "shall be a basis to inform the Antisemitism Prevention Coordinator on how to

2  identify, respond to, prevent, and counter antisemitism." *Id.* (creating Cal. Educ. Code §

3  33803.1(c)).[9]

4         Plaintiffs fail to plead an overbreadth claim. As this Court pointed out, Plaintiffs provide

5  allegations pertaining to AB 715's supposed effect on the Plaintiffs themselves, but fail to address

6  how a substantial number of AB 715's applications may be unconstitutional. *See* Order at 16–18.

7  Instead, the Complaint merely provides bare legal conclusions that the statute is overbroad. *See*

8  Compl. ¶ 290. Plaintiffs fail to allege facts plausibly suggesting that there are any potential

9  unconstitutional applications based on the face of the statute that are "realistic, not fanciful," let

10 alone that there is a "lopsided ratio" between constitutional and unconstitutional applications. *See*

11 *United States v. Hansen*, 599 U.S. 762, 770 (2023). A party bringing an overbreadth challenge

12 must "describe the instances of arguable overbreadth of the contested law," which Plaintiffs fail

13 to do. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008).

14 Plaintiffs' overbreadth claim therefore fails. *See Crownholm v. Moore*, 652 F. Supp. 3d 1155,

15 1168 (E.D. Cal. 2023), *aff'd*, No. 23-15138, 2024 WL 1635566 (9th Cir. Apr. 16, 2024)

16 (dismissing First Amendment overbreadth claim because "Plaintiffs have not alleged that the

17 [challenged statute] has been enforced against someone engaged in protected speech . . . let alone

18 that such an application constitutes a 'substantial' number of enforcement actions").

19         At any rate, even on the face of the pleadings and based on binding precedent, the plainly

20 legitimate sweep of the challenged provisions overwhelms any possible unconstitutional

21 applications. This determination can be made at the pleadings stage. For example, in *Hernandez*

22 *v. City of Phoenix*, 43 F.4th 966, 981 (9th Cir. 2022), the Ninth Circuit affirmed dismissal of a

23 First Amendment overbreadth challenge to a policy regulating certain social media posts by

24 police department employees. There, even though the policy applied to the private speech of

25 government employees outside of the scope of their job duties, the Ninth Circuit held that the

26

27         [9] As noted above, Superintendent Thurmond in his official capacity has Eleventh
   Amendment immunity from any challenge to Education Code § 33803.1(c)'s reference to the
28 National Strategy.

1    plaintiffs failed to state a facial overbreadth challenge. *Id.* Because the policy's language directly

2    furthered a government interest that is constitutionally permissible based on existing case law—

3    namely "'maintaining a relationship of trust and confidence with the communities [police

4    departments] serve'"—plaintiffs failed to plead that a "substantial number" of the policy's

5    applications were unconstitutional in relation to the policy's "plainly legitimate sweep." *See id.*

6    (quoting *City of San Diego v. Roe*, 543 U.S. 77, 81 (2004)).

7         The grounds for dismissal here are even clearer than in *Hernandez*, given that there is no

8    indication AB 715 implicates the private speech of government employees, whether the Plaintiffs

9    themselves or other individuals.[10] But "[e]ven assuming that [AB 715] reaches some protected

10   speech" (which it does not), dismissal of the overbreadth claim is nonetheless appropriate. *See*

11   *Hansen*, 599 U.S. at 784. As in *Hernandez*, the plain language of the challenged law "closely . . .

12   track[s]" the interests that the state "may constitutionally pursue," 43 F.4th at 981—here,

13   preventing discrimination against a group the Legislature has "reason to believe . . . is the target

14   of discrimination," *see Hurley*, 515 U.S. at 572. Indeed, the Ninth Circuit has upheld similar

15   antidiscrimination measures against overbreadth challenges. *See Arce*, 793 F.3d at 985 (law that

16   "prohibit[ed] any courses or classes that '[p]romote resentment toward a race or class of people'"

17   was not overbroad); *Good News*, 223 F. App'x at 736 (policy prohibiting "discrimination and/or

18   harassment based on sexual orientation" was not overbroad). *See also Wisconsin v. Mitchell*, 508

19   U.S. 476, 488 (1993); *McCarthy v. Fletcher*, 207 Cal. App. 3d 130, 147, 149 (1989).

20        For the foregoing reasons, Teacher Plaintiffs fail to plead either viewpoint discrimination

21   or overbreadth, and the second claim must be dismissed.

22

23

_____

24        [10] Even when considering the possible effect of the statute on third parties rather than the
     Plaintiffs, AB 715 applies exclusively to government speech by government employees. "A

25   statute that does not have a substantial impact on speech or expressive conduct protected by the
     First Amendment will not support a facial challenge under the overbreadth doctrine." *Vargas v.*

26   *Gastelo*, No. 17-cv-9143-PJW, 2018 WL 4292202, at *5 (C.D. Cal. Sept. 7, 2018) (citing *City of*
     *Chicago v. Morales*, 527 U.S. 41, 52–53 (1999)); *see also Virginia v. Hicks*, 539 U.S. 113, 124

27   (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is

28   not specifically addressed to speech or to conduct necessarily associated with speech.").

**C.** **The Third Claim Alleging Violation of Student Plaintiffs' First Amendment Rights Must Be Dismissed**

Student Plaintiffs also allege two theories for their First Amendment Claim: viewpoint discrimination and overbreadth. For the following reasons, both theories fail.

**1.** **Student Plaintiffs Fail to State a Plausible Claim for Relief**

To allege that a plaintiff is "entitled to relief," a complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Yet as this Court's prior decision establishes, Student Plaintiffs fail to clear that hurdle, instead alleging nothing more than "the subjective fear of an impending future violation." *See* Order at 20. The "conclusory nature of [Student Plaintiffs'] allegations . . . disentitles them to the presumption of truth." *See Iqbal*, 556 U.S. at 681. Thus, even drawing all inferences in Student Plaintiffs' favor, the Complaint "do[es] not permit the court to infer more than the mere possibility" of a constitutional violation, and Student Plaintiffs' claim must be dismissed in its entirety. *See id.* at 679.

**2.** **Student Plaintiffs Fail to Plead That AB 715 Violates Their First Amendment Right to Receive Information**

Although students have a limited right to "receive information," *see Arce*, 793 F.3d at 988, that right is bounded by the State's "undoubted right to prescribe the curriculum for its public schools," *see Epperson v. Arkansas*, 393 U.S. 97, 107 (1968). Thus, under *Hazelwood School District v. Kuhlmeier* ("*Hazelwood*"), the government may restrict speech in schools in furtherance of "legitimate pedagogical concerns." 484 U.S. 260, 273 (1988). This rule extends to a "state['s] limitations on school curricula," which will be upheld "where they are reasonably related to legitimate pedagogical concerns." *Arce*, 793 F.3d at 983. As a corollary of the legitimate pedagogical interest test, the government may also "disassociate itself" from certain speech in the school context, including speech that would "impinge upon the rights of other students" or is "biased or prejudiced." *See Hazelwood*, 484 U.S. at 271.

Student Plaintiffs' claim fails because, like Teacher Plaintiffs, they seek to dictate curricula. *See* Compl. ¶¶ 295–96 ("Student Plaintiffs' parents believe that, in order to receive a

18

1  well-rounded education, their children must be exposed to multiple perspectives on Israel and

2  Palestine in school," and "[i]n their opinions, that includes information about the Nakba, the

3  occupation of the West Bank and blockade of Gaza, and the claims of numerous scholars and

4  human rights organizations that Israel has committed war crimes in Gaza and the West Bank and

5  genocide in Gaza."). Yet as this Court stated, Ninth Circuit precedent establishes that "students

6  . . . do not have a 'First Amendment right to influence curriculum as they so choose.'" Order at 20

7  n.13 (quoting *Downs*, 228 F.3d at 1015–16).

8       Further, Plaintiffs allege that AB 715 is motivated by "no legitimate reason, since there is

9  no state interest in perpetuating one-sided narratives and silencing debate." Compl. ¶ 301.

10  However, this "mere conclusory statement[]" cannot be credited. *See Iqbal*, 556 U.S. at 678.

11  Plaintiffs cannot point to any provision of AB 715 that perpetuates one-sided narratives or

12  silences debate, because the statute simply does nothing of the sort. *See United States v. O'Brien*,

13  391 U.S. 367, 383 (1968) ("It is a familiar principle of constitutional law that th[e] Court will not

14  strike down an otherwise constitutional statute on the basis of an alleged illicit legislative

15  motive."). None of the challenged provisions even mention Israel or Palestine.

16       To the contrary, the plain language of the statute makes clear that it is "reasonably related"

17  to the legitimate pedagogical interest of ensuring that students are able to learn without being

18  subject to discrimination and to receive instruction and instructional materials that are factually

19  accurate. *See Arce*, 793 F.3d at 983. Here, the existence of a legitimate pedagogical interest can

20  be established at the pleadings stage. *See Napa Valley Publ'g Co. v. City of Calistoga*, 225 F.

21  Supp. 2d 1176, 1192 (N.D. Cal. 2002) (quoting *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297

22  (9th Cir. 1984)) ("In First Amendment cases, substantial government interests are 'determined by

23  objective indicators as taken from the face of the statute, the effect of the statute, comparison to

24  prior law, facts surrounding the enactment of the statute, the stated purpose and the record of the

25  proceedings.'"); *cf. Roe v. Critchfield*, 137 F.4th 912, 924–25 (9th Cir. 2025) (under intermediate

26  scrutiny analysis, determination that state statute is closely related to an "important governmental

27  objective[]" could be made without extrinsic evidence where the state's "justification is easily

28  corroborated by common experience and circuit precedent").

As amended, section 244 of the Education Code prohibits materials that "would subject a pupil to unlawful discrimination"; section 51500 prohibits instruction that "promotes a discriminatory bias" on the basis of protected characteristics; and section 51501 prohibits instructional materials that "contain any matter reflecting adversely upon persons on the basis" of protected characteristics. *See* AB 715 §§ 2, 7, 8.

Binding precedent forecloses Plaintiffs' theory that these provisions violate the Student Plaintiffs' rights. First, with respect to the statutory provisions that seek to prevent discrimination, both Supreme Court and Ninth Circuit case law establish that this constitutes a "legitimate pedagogical interest." *See Hazelwood*, 484 U.S. at 271 (the government may "disassociate itself" from speech that would "impinge upon the rights of other students" or is "biased or prejudiced"); *Arce*, 793 F.3d at 985 (upholding statute based on the state's "legitimate pedagogical interest in reducing racism").

Second, with respect to the provisions requiring that instruction and materials be factually accurate, the Supreme Court stated in *Hazelwood* that schools may "disassociate" themselves from speech that is "inadequately researched" or educationally "unsuitable." 484 U.S. at 271. And Courts have held that policies requiring materials to be factually accurate satisfy *Hazelwood*. *See, e.g.*, *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1202 (11th Cir. 2009) ("Whatever else it prohibits, the First Amendment does not forbid [the removal of] a book because it contains factual inaccuracies, whether they be of commission or omission. There is no constitutional right to have books containing misstatements of objective facts shelved in a school library."); *see also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 871 (1982) (books may be constitutionally removed based on "educational suitability"). As Ninth Circuit precedent establishes, this reasoning applies equally to classrooms and curricula. *See Arce*, 793 F.3d at 983.

AB 715's amendments to sections 51500(b) and 51501(b) of the Education Code satisfy *Hazelwood*'s legitimate pedagogical interest requirement by ensuring that instruction and instructional materials are "factually accurate." *See* AB 715 §§ 7, 8. Although Plaintiffs express concern that this standard may be applied to fictional works, following Plaintiffs' argument could

20

1  lead to the incorrect conclusion that AB 715 prohibits the instruction of *all* fictional books. That

2  necessarily would be inconsistent with the stated legislative intent of strengthening anti-

3  discrimination measures and preventing antisemitism.

4        Moreover, although AB 715's operative provisions do not actually touch on discussion of

5  the Israel-Palestine conflict, it is worth noting that a school may also disassociate itself from

6  speech that would "associate the school with any position other than neutrality on matters of

7  political controversy." *Hazelwood*, 484 U.S. at 272. By requiring that materials and instruction

8  "be consistent with accepted standards of professional responsibility" and remain uninfluenced by

9  "advocacy, personal opinion, bias, or partisanship," AB 715's amendments to sections 51500(b)

10  and 51501(b) stay within the bounds set by existing caselaw. *See* AB 715 §§ 7, 8. Rather than

11  infringing on students' right "to receive an education free from political bias," as Plaintiffs allege,

12  Compl. ¶ 300, these provisions actually ensure it.

13        Because the Complaint misconstrues the plain language of the statute and fails to plausibly

14  allege that AB 715 is unsupported by a legitimate pedagogical interest, Student Plaintiffs fail to

15  plead a violation of their First Amendment right to receive information.

16        **3.    Student Plaintiffs Fail to Plead Overbreadth**

17        As the Court's Order indicates, Plaintiffs fail to establish an overbreadth claim. The

18  Complaint fails to provide any allegations indicating that a substantial number of AB 715's

19  applications may be unconstitutional, instead providing nothing more than bare legal conclusions.

20  *See* Compl. ¶ 306. And as discussed above, AB 715 on its face directly furthers an interest the

21  state "may constitutionally pursue," and therefore cannot be considered unconstitutional in a

22  substantial number of its applications. *See Hernandez*, 43 F.4th at 981. Accordingly, Student

23  Plaintiffs also fail to allege that AB 715 is overbroad for the same reasons the Teacher Plaintiffs'

24  overbreadth claim fails.

25        For the foregoing reasons, the third claim brought by Student Plaintiffs must be dismissed.

26        **D.    Leave to Amend Should Be Denied Based on Futility**

27        The defects in Plaintiffs' facial challenges to AB 715 are fatal to their claims, and "no

28  amendment would allow the complaint to withstand dismissal as a matter of law." *See Kroessler*,

977 F.3d at 815. Binding precedent forecloses any claims that are premised on the non-existent right of teachers to control curricula or otherwise challenge the regulation of unprotected government speech. *See Johnson*, 658 F.3d at 961; *Kennedy*, 597 U.S. at 527. Likewise, precedent establishes that AB 715 is facially constitutional because it serves legitimate pedagogical interests, *see Hazelwood*, 484 U.S. at 272–73; is not overbroad, *see Arce*, 793 F.3d at 983–98; and provides fair notice of its requirements, *see Tingley*, 47 F.4th at 1089. Even at the pleadings stage, AB 715 passes constitutional muster on its face, and therefore Plaintiffs' claims fail as a matter of law.

Accordingly, amendment would be futile, and leave to amend should be denied. *See Cruz v. Select Portfolio Servicing, Inc.*, No. 19-cv-00283-LHK, 2019 WL 2299857, at *10 (N.D. Cal. May 30, 2019) ("[I]t would be unduly prejudicial to Defendants to require Defendants to continue to litigate a claim that fails as a matter of law.").

## CONCLUSION

Plaintiffs' claims are not justiciable and fail on the merits. For these reasons, and because amendment would be futile, the case should be dismissed without leave to amend.


Dated: January 30, 2026                                    Respectfully submitted,

                                                           ROB BONTA
                                                           Attorney General of California
                                                           DARRELL W. SPENCE
                                                           Supervising Deputy Attorney General

                                                           /s/ Andrew Z. Edelstein
                                                           ANDREW Z. EDELSTEIN
                                                           Deputy Attorney General
                                                           *Attorneys for Superintendent of Public Instruction Tony Thurmond, in his official capacity*