UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA PRICHETT, et al., | Case No. 25-cv-09443-NW |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| ROB BONTA, et al., | |
| Defendants. | Re: ECF No. 91 |

Before the Court is Defendants' motion to dismiss Plaintiffs' second amended complaint ("SAC").[1] ECF Nos. 89, 91. The Court heard oral argument on the motion on July 1, 2026. For the following reasons, the Court GRANTS WITH PREJUDICE Defendants' motion to dismiss.

## I. BACKGROUND

The Court assumes familiarity with the facts laid out in its previous Order. *See* ECF No. 72, Order. Briefly, Plaintiffs are California public school teachers and students who oppose the enforcement of Assembly Bill 715 ("AB 715"), titled "Educational equity: discrimination: antisemitism prevention." AB 715, which became effective on January 1, 2026, amends and adds sections to California's existing Education Code. *See, e.g.*, AB 715 § 5 (creating Cal. Educ. Code §§ 33800-33804); *id.* § 9 (amending Cal. Educ. Code § 60151).

The aim of AB 715 is to stem the "widespread surge in antisemitic discrimination,

---

[1] Plaintiffs are Andrea Prichett, Jonah Olson, Dunia Hassan, Kauser Adenwala, and LA Educators For Justice in Palestine ("Teacher Plaintiffs") and Abdulrahman Jarrar, on behalf of his minor child, J.J., Linda Khoury-Umili, on behalf of her minor children, Y.U. and L.U.; and Alice Finen, on behalf of her minor child, G.F. ("Student Plaintiffs") (collectively, "Plaintiffs"). Defendants are Tony Thurmond in his official capacity as California Superintendent of Public Education, in his official capacity and Nick Maduros in his official capacity as Secretary of the Government Operations Agency.

harassment, and bullying" faced by "Jewish and Israeli American pupils across California." *Id.* § 1(c). Governor Newsom signed the bill into law on October 7, 2025, two years to the day after Hamas attacked Israel, killing more than 1,200 people and inciting open conflict in the region. Among other things, the bill specifies that the "United States National Strategy to Counter Antisemitism, published by the Biden Administration on May 25, 2023, shall be a basis to inform schools on how to identify, respond to, prevent, and counter antisemitism." *Id.* § 1(i). Plaintiffs worry that the National Strategy's definition of Antisemitism will prevent public school teachers from providing balanced and factually accurate information about the current conflict in the area, including the deaths of approximately 70,000 Palestinians in Gaza since October 7, 2023.

On December 31, 2026, the Court issued an Order denying Plaintiffs' motion for a preliminary injunction. In so doing, the Court made numerous holdings. First, the Court found that Teacher Plaintiffs' claims were not prudentially ripe. As the Court previously explained:

> [C]rucial aspects of AB 715 are still in motion and not fit for review. For example, § 5 requires the yet-to-be-created [Office of Civil Rights] OCR (which will presumably be run by a yet-to-be appointed Director) to employ a yet-to-be-appointed Antisemitism Prevention Coordinator, who will consider the Biden National Strategy as "a basis" among potential others to inform "how to identify, respond to, prevent, and counter antisemitism." Judicial review of AB 715 is premature given the countless factual uncertainties, substantive and temporal, that may unfold in the future.

Order at 10.

Second, the Court found that, even assuming the claims were ripe, Teacher Plaintiffs' claims failed on the merits because: (1) Teacher Plaintiffs are not acting as private citizens and therefore do not have First Amendment rights while teaching, *id*. at 12–16 and *Garcetti v. Ceballos*, 547 U.S. 410, 421-424 (2006); (2) Teacher Plaintiffs did not sufficiently allege an overbreadth claim consistent with the directives of *Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024), *id*. at 16–18; and (3) Teacher Plaintiffs did not sufficiently allege that the term "antisemitism" was vague, *id.* at 18–19. The Court also found that Student Plaintiffs failed to allege an injury-in-fact sufficient to confer standing.

The factual allegations in the SAC mostly mirror the original complaint but for some targeted additions. *See* Redline, ECF No. 101. For the purposes of this Order, the Court notes that

United States District Court
Northern District of California

2

Plaintiffs now additionally allege that:

- AB 715 restricts teacher speech both inside and outside the classroom. *See* SAC ¶¶ 15-16 ("Nothing in the new law distinguishes between teacher expression imparted in the classroom from that imparted outside the classroom.")

- In allowing the submission of anonymous complaints, AB 715 promotes "complaint-driven enforcement mechanisms . . . deter instruction and discussion of disfavored political viewpoints, including perspectives related to Palestine, Israel, and Middle Eastern history." *Id.* ¶ 24.

- "AB 715 violates the Equal Protection Clause by expressly creating an Antisemitism Prevention Coordinator while consigning protections for students of other faiths and identities to speculative future legislation." *Id.* ¶ 32.

The SAC asserts four causes of action on behalf of two sets of Plaintiffs. Teacher Plaintiffs allege that AB 715 is unconstitutionally vague (Count I), and that AB 715 is both overbroad and constitutes viewpoint discrimination, in violation of their First Amendment right to free speech (Count II). Student Plaintiffs allege a free speech violation (identical to that raised by Teacher Plaintiffs), predicated on their right to receive information (Count III), and that AB 715 violates students' rights under the Equal Protection Clause. Plaintiffs alleged Counts I-III in the previous complaint but bring Count IV for the first time in the SAC.

## II.    LEGAL STANDARD

### A.    Standing and Ripeness

A federal court has subject matter jurisdiction over a claim only if the plaintiff has standing to bring the claim, and the claim is ripe for adjudication. *Chandler v. State Farm Mut. Automobile Ins. Co.,* 598 F.3d 1115, 1121 (9th Cir. 2010). "While standing is primarily concerned with who is a proper party to litigate a particular matter, ripeness addresses when that litigation may occur." *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997). "The ripeness doctrine is . . . designed to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Stockton v. Brown*, 152 F.4th 1124, 1142 (9th Cir. 2025), *cert. denied,* No. 25-606, 2026 WL 1203416 (U.S. May 4, 2026) (cleaned up). "There are two ripeness considerations: constitutional and prudential." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024). "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing

United States District Court
Northern District of California

inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

"The prudential ripeness inquiry is 'guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025), *cert. denied sub nom.*, No. 24-1061, 2025 WL 2823711 (Oct. 6, 2025) (quoting *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1154 (9th Cir. 2017)). "The fitness prong is met when 'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1070 (9th Cir. 2022), *abrogated on other grounds by Chiles v. Salazar*, 146 S. Ct. 1010 (2026) (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009)). "Evaluating whether withholding judicial review presents a hardship requires looking at whether the challenged law 'requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance.'" *Id*. at 1070–71 (quoting *Stormans*, 586 F.3d at 1126).

### B.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Similarly, conclusory legal allegations are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

## III.    DISCUSSION

In opposing Defendants' motion to dismiss, Plaintiffs advance several arguments that the Court has already considered and dispatched. As a result, Plaintiffs' opposition reads like a motion for reconsideration. *See* ECF No. 95, Opp'n at 10 ("respectfully urg[ing] the Court to

4

reconsider in light of [Plaintiffs'] more fully developed arguments."), 16 ("respectfully acknowledg[ing] that the Court reached a different conclusion" on first amendment protections for teachers in the classroom).  Plaintiffs have not provided any compelling reason for the Court to disturb any of its findings on standing, ripeness, or the merits, and the Court affirms its reasoning in dismissing Counts I-III below.  Plaintiffs' only new claim is equal protection, which the Court dismisses on the merits (Count IV).

### A.     This suit is not prudentially ripe (Counts I and II).

As discussed above and in the Court's previous Order, prudential ripeness is "guided by two considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000)).  Both factors favor the Court's previous finding that the case is not prudentially ripe.

As to the first factor, the Court already found, "[j]udicial review of AB 715 is premature given the countless factual uncertainties, substantive and temporal, that may unfold in the future." Order at 10.  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998).

Teacher Plaintiffs' claims rest on contingent future events, including the build-out of an Office of Civil Rights within the California Department of Education, the appointment of a director of that office, and the appointment of an Antisemitism Prevention Coordinator who will report to that director.  Without more information about the nature of the office and the role the office and Antisemitism Coordinator will have adjudicating complaints, the Court lacks the information necessary to review Teacher Plaintiffs' claims.  In sum, where, as here, further factual development would "significantly advance [the Court's] ability to deal with the legal issues presented," the underlying claims are not yet fit for judicial decision.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (internal quotation marks omitted); *cf. Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (holding that case was prudentially ripe because "[i]n contrast to cases in which the courts are left to hypothesize

United States District Court
Northern District of California

about how the law might be applied, Plaintiffs' claims arise from an enforcement action that has already occurred").

As to the second factor, the Court has already found that any hardship caused by the Court's withholding of consideration does not outweigh the Court's interest in delaying review until the specifics of AB 715 are more concrete. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1218 (9th Cir. 2006). Because the Plaintiffs have not presented evidence that any teachers have been targeted at a result of AB 715, or that any students lost access to any instruction they otherwise would have received but for AB 715, this hardship requirement has not been met. This Court will not hypothesize about how the government may someday apply AB 715, nor speculate regarding the unknown future hardships to students or teachers that may occur due to the government's application of the law.

As to Counts I and II, the remainder of Plaintiffs' opposition brief rehashes arguments the Court has already addressed. While the Court is not required to abide by its previous ripeness finding, Plaintiffs do not point to any change in circumstance or factual predicate that warrants the Court reconsidering its previous findings. "AB 715 took full effect on January 1, 2026, imposing legally binding and concrete obligations on schools at that time." *Id.* at 6. And yet, Plaintiffs have not pointed to a single instance in which AB 715 has been used, or has even been invoked, to challenge the type of conduct Plaintiffs intend to engage in. Additionally, Plaintiffs misunderstand the "factual" inquiry required under the prudential ripeness doctrine. The uncertainty "as to whether districts are currently applying AB 715" establishes that dismissal is appropriate *because* those facts have yet to come to pass. Opp'n at 6. Plaintiffs may have a colorable claim when they do, but not before.

Defendants' motion to dismiss Counts I and II is GRANTED WITH PREJUDICE.

**B.     Student Plaintiffs do not have standing to bring a first amendment challenge (Count III)**

The Court previously found that "Student Plaintiffs ha[d] not demonstrated an adequate and imminent injury" to confer standing. Order at 19. As the Court previously explained:

The injury alleged by Student Plaintiffs' claim is that they are entitled

United States District Court
Northern District of California

6

to receive information that, with the passage of AB 715, they expect they will no longer receive. This type of injury—the subjective fear of an impending future violation—is too speculative to confer standing. *See Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) ("Mere speculation or subjective apprehension about future harm [does not] support standing.") (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (internal quotations omitted)).

Order at 20. This analysis is equally applicable at the motion to dismiss stage.

According to Plaintiffs, the SAC "alleges that educators and school personnel have already curtailed discussion of Palestinian history, anti-Zionism, genocide, settler colonialism, and criticism of Israeli government policy due to fear of complaints, investigations, reputational harm, and professional consequences associated with AB 715's enforcement structure." Opp'n at 7. As a result, Student Plaintiffs contend, they have plausibly alleged that AB 715 has violated their rights to receive an education.

As an initial matter, all of these alleged "violations" occurred before AB 715 went into effect. As the Court's prior Order explained, the "litany of complaints and disciplinary actions [Teacher Plaintiffs] have faced in recent years . . . occurred under the *current California Education Code* — existing law that Teacher Plaintiffs do not challenge." Order at 10 (citing Compl. ¶¶ 53-107). The SAC does not add a single supposed violation that occurred *after* January 1, 2026. Further, Student Plaintiffs overstate the allegations within the SAC. While *Teacher Plaintiffs* have alleged that, in their own classrooms, they have ceased discussing certain topics related to Israel and Palestine, *Student Plaintiffs* have not alleged any facts that demonstrate that *they specifically* were deprived lessons or instruction that they otherwise would have received but for AB 715. Plaintiffs cannot mix-and-match allegations to demonstrate standing; it is not enough that some teachers have modified their speech, Student Plaintiffs must allege that *their* teachers did so. They have not.

Regardless, even if they had, the Court finds it unlikely that Student Plaintiffs would be able to succeed on the merits of Count III. The Court previously acknowledged the existence of a student's First Amendment rights to receive information. Order at 20 (citing *Monteiro v. Tempe Union Sch. District*, 158 F.3d 1022, 1027 n. 5 (9th Cir. 1989)). But the Court also was explicit in stating that "the limits of that right [were] murky." Order at 20; *see also Downs v. Los Angeles*

*Unified Sch. Dist.*, 228 F.3d 1003, 1015–16 (9th Cir. 2000).  Among other things, *Downs* holds that students and teachers do not have a "First Amendment right to influence curriculum as they so choose."  *Id.*  The Court's reading of the current case law is that a plaintiff must point to instruction or lessons they *otherwise would have received* in order to allege a deprivation of the First Amendment right to receive information.  *See, e.g.*, *Arce v. Douglas*, 793 F.3d 968, 983 (9th Cir. 2015) (explaining that a student's First Amendment right is infringed if the state "remove[s] materials ***otherwise available*** in a local classroom . . ." (emphasis added)).  Student Plaintiffs have not alleged that they were going to receive information related to Israel and Palestine and now will not.  Consequently, Student Plaintiffs have not sufficiently asserted a First Amendment claim.

Accordingly, Defendants' motion to dismiss Count III is GRANTED WITH PREJUDICE.

### C.     Student Plaintiffs' equal protection claim fails on the merits (Count IV)

Student Plaintiffs allege that "AB 715 discriminates on the basis of religion."  SAC ¶ 409.  Specifically, they maintain that AB 715 "confers specialized statewide oversight, enforcement authority, and institutional resources to address antisemitism alone, while relegating all other forms of religious discrimination to a speculative and optional framework."  *Id.* ¶ 405.  Student Plaintiffs contend, therefore, that AB 715 violates the Equal Protection Clause of the Fourteenth Amendment.  Student Plaintiffs are wrong.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  For Student Plaintiffs to succeed on their Equal Protection claim, they must show that AB 715 has a discriminatory effect and was motivated by a discriminatory purpose.  *Rosenbaum v. City and Cnty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  To establish a discriminatory effect, Student Plaintiffs must demonstrate that they were being treated less favorably due to their status as a member of a protected class.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).  To allege discriminatory purpose, Student Plaintiffs must show that Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Id.* (quoting *Wayte*, 470 U.S. at 610).

8

As an initial matter, AB 715 does not discriminate on the basis of religion. "The Supreme Court has distinguished 'between state action that discriminates on the basis of race and state action that addresses, in neutral fashion, race-related matters.' The former violates equal protection, but the latter does not." *Valeria v. Davis*, 307 F.3d 1036, 1042 (9th Cir. 2002) (quoting *Crawford v. Bd. of Educ. of City of Los Angeles*, 458 U.S. 527, 538 (1982)). Here, the California Legislature decided that the rise of Antisemitism in California warranted the creation of an Office of Civil Rights and an Antisemitism Coordinator. AB 715 attempts to address, in a neutral fashion, the results of increasing Antisemitism in California schools; it does not attempt to discriminate against students on the basis of their religion.

Regardless, the mission of the Office of Civil Rights is to "prevent and address discrimination and bias pursuant to Section 220," meaning discrimination on the basis of *any* protected class. Cal. Educ. Code §§ 33801(c), (d). AB 715 further tasks the Office of Civil Rights with providing "education and educational resources to identify and prevent antisemitism *and other forms of discrimination and bias*." *Id.* § 33802 (emphasis added). The existence of an Antisemitism Coordinator does not change the Office's overarching purpose to stop discrimination generally; it merely reflects the State's decision to accord specific funds to a specific problem.

Further, Student Plaintiffs fail entirely to demonstrate discriminatory intent. "Whenever a challenger claims that a . . . law was enacted with discriminatory intent, the burden of proof lies with the challenger." *Abbott v. Perez*, 585 U.S. 579 (2018). It is not enough to show that the lawmakers had an "awareness of [the] consequences" of the legislation for the affected group, that those consequences were "foreseeable," , or that the legislature acted "with indifference to" the effect on that group, *Luft v. Evers*, 963 F.3d 665, 670 (7th Cir. 2020). Rather, the lawmaking body must have "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279. At best, Student Plaintiffs point to legislative history associated with *unenacted* versions of AB 715. [M]urky legislative history . . . can't overcome a statute's clear text and structure." *Azar v. Allina Health Servs*., 587 U.S. 566, 581 (2019).

Finally, even if Student Plaintiffs had sufficiently alleged an equal protection violation, the

9

existence of Senate Bill 48 ("SB 48") cures any constitutional infirmity. The California Senate enacted SB 48 as a companion bill to AB 715. It requires the OCR to appoint a "Religious Discrimination Prevention Coordinator," a "Race and Ethnicity Discrimination Prevention Coordinator," a "Gender Discrimination Prevention Coordinator, and an "LGBTQ Discrimination Prevention Coordinator." SB 48 §§ 1–4 (creating Cal. Educ. Code §§ 33803.2-33803.5). "[W]hen the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Sessions v. Morales-Santana*, 582 U.S. 47, 73 (2017) (quoting *Heckler v. Mathews,* 465 U.S. 728, 740 (1984)). SB 48 already creates additional coordinators tasked with rooting out different types of discrimination, including discrimination on the basis of race or religion. SB 48 § 33803.2.

Accordingly, Defendants' motion to dismiss Count IV is DISMISSED WITH PREJUDICE.

**IV.    CONCLUSION**

Defendants' motion to dismiss Plaintiffs' SAC is GRANTED WITH PREJUDICE. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

Dated:  July 28, 2026

_____
Noël Wise
United States District Judge

10